## ROSS v. TROY & BOSTON RAILROAD CO.

*Common Carrier. Negligence. Sale. Vesting of Title.*

A carrier of freight is, as against the acts of the shipper, bound to the exercise of reasonable care and diligence only. Thus, where plaintiff loaded heavy machinery upon a platform car, and blocked its wheels with insufficient blocking insecurely nailed, by reason whereof the machinery, while being transported by defendant, broke from its fastenings without fault of defendant in the running of the train or in maintenance of the track, and was injured, it was *held*, that defendant was not liable therefor, although its yard-master and forwarder of freight cars saw the fastenings and noticed their insufficiency before the injury was done.

The shipper of the machinery, who lived in R., was under contract to erect a building for the consignees, in P., and furnish it with machinery, for a gross sum, the consignees paying freight on the machinery. *Held*, that the shipper might maintain an action against the carrier for injuries done to the machinery while in transit.

CASE for negligence in carrying machinery, whereby it was injured. Plea, the general issue, and trial by jury, September Term, 1876, WHEELER, J., presiding.

Plaintiff's evidence tended to show that his workmen, on May 18, 1874, by his direction, loaded on a platform car that had been furnished him at his shop in Rutland by the Delaware & Hudson Canal Company, certain machinery, consisting among other things, of a piece of shafting with a fly-wheel and pulley at one end and a crank and crank-wheel at the other, consigned to Strother & Sons of Philadelphia, to be transported by said company to Eagle Bridge, and thence by defendant over its railroad to Troy, whence it was to go by water to Philadelphia, where

plaintiff was to take it and set it up for the consignees, under a contract to erect for them a building and furnish it with machinery for $9500, the consignees paying the freight on the machinery; that the machinery was fastened on the car by blocks made of slabs fifteen to eighteen inches long, split through the middle, and placed as blocking under the fly-wheel and crank-wheel, the thick part being next to the wheels, and nailed to the floor of the car with twenty-penny nails, and was apparently sufficiently fastened; that after it was so loaded and fastened, plaintiff's superintendent was called and examined it, and pronounced the fastenings sufficient; that it was the custom of plaintiff to have his workmen load the machinery that he manufactured and sent to his customers, and fasten it in such manner as they deemed sufficient, and for the railroad company to do nothing about loading it or fastening it before it was started; that the car on which the machinery was loaded was taken by the canal company to Eagle Bridge, and there received by defendant, whose road was then in operation; that within a few days thereafter, the machinery was returned from Troy by defendant, with the pulley and crank and crank-wheel broken and the shaft bent; and that the injury happened while the machinery was in the possession of the defendant.

The defendant's testimony tended to prove that the car on which the machinery was loaded, was duly received by defendant and taken to Troy; that after its arrival, it was put into a train, and the train carefully backed down towards the docks at a rate of speed not exceeding three miles an hour; that while the train was rounding a curve, the outer wheels of the car on which the machinery was, rose and tipped so that the fastenings under the lower side of the fly-wheel gave way, and the shaft and wheels rolled over and against the abutment of a bridge on the lower side of the car, and finally fell to the ground and were thereby injured; that the engineer and fireman were looking at the wheel as it began to roll; that the engineer instantly reversed the engine, and the fireman applied the brakes, stopping the train within the length of a car, and as soon as possible; that the track was well constructed and in good condition, and that the accident

happened without any fault on the part of defendant, its agents or servants, in running the train.

Defendant's evidence further tended to show, that upon examination had immediately after the train was stopped, it appeared that the blocking on the lower side of the fly-wheel was turned around, and held to the car by one nail near one end ; that two nails at the other end were broken of, while nearer the middle there were four or five driven through the block but not into the floor of the car, they having turned and clinched in the bottom of the block.

Defendant's evidence further tended to show that the injury happened wholly from the unskillful manner in which the nails were driven into the block under the west and lower side of the fly-wheel.

Among other witnesses who testified as to the cause of the accident, was Philip H. Hicks, defendant's yard-master at Troy, part of whose business it was to receive and forward freight cars, and to see that they were in good condition and properly loaded, and who, on cross-examination, testified that he noticed after the car came into the yard at Troy, that the blocking of the machinery was shaky ; that it was not very securely blocked for such big machinery, the wheels being so high and so slight blocking under them, that he wondered it had come so far in that condition, and spoke to their men about it, and that he should not have sent it along if he had used his better judgment ; but that the blocking under the large wheel that finally gave way and caused the injury, was in its place, and did not appear to have been stirred at all, and that the only defect in it was, that it was insufficient in the first place. And one Patrick Carey testified that he was the conductor of the train in which the car was when the machinery fell off ; that the car came into the yard at Troy about six o'clock one evening, and left at nine or ten o'clock in the morning, a day or two after ; that he saw it with the machinery on it after it came in and noticed how it was loaded ; that the large wheel was blocked on both sides, but not endwise ; that he did not notice anything wrong about it, but thought that the car was all right, and also the fastenings.

Defendant also introduced testimony tending to show that plaintiff testified on a former trial that he considered that the property in the machinery passed to the consignees when it was placed on the car. Defendant also claimed that the jury should find from the evidence that the injury to the machinery was caused by the unskillful and insufficient manner in which the block was nailed and fastened by plaintiff, and that as the insufficiency in the fastenings of the block was not visible, defendant could have had no knowledge of it, and that as the injury happened without any fault or carelessness on the part of defendant or its servants, defendant was entitled to a verdict; that plaintiff, having taken upon himself the responsibility to load the machinery, and to fasten the same, and having delivered it to the railroad company so loaded and fastened, and apparently secure and in good condition, the jury might find an implied contract that defendant should not be held liable for an injury resulting from any defects in the loading and fastening of the machinery, and that as the machinery was consigned to Strother & Sons, and they paid the freight on it, there was a delivery of it to them at Rutland, and that therefore plaintiff could not maintain the suit.

The court held that the claims of the defendant were not all warranted by the evidence; that as the defendant's yard-master at Troy, and the conductor of the train carrying the machinery, observed the machinery and its condition before it was sent along, to be delivered to the next carrier, it was the duty of them, or some other of the agents or servants of the defendant, if anything was necessary to be done to make the machinery secure for transportation to the next carrier, to do it; and that as nothing was done, and the machinery was injured while being transported by defendant, defendant was liable, if the machinery was the property of the plaintiff; and charged the jury that if by the understanding between plaintiff and Strother & Sons, the property was to become theirs when delivered on the cars, they should return a verdict for defendant; but if it remained the property of plaintiff, to return a verdict for him; to which defendant excepted.

*Gardner & Harmon* ( *C. N. Davenport* with them), for defendant.

The first point at issue was, whether the consignor of goods shipped by railway can maintain an action in the event of their injury, under the circumstances of this case. That the action ought properly to have been brought by the consignee, and that after the determination of this suit another can be brought by the consignee notwithstanding a judgment in this, is evidently settled in the following cases. *Dawes* v. *Peck*, 8 T. R. 330 ; 2 Saund. 475 ; 3 P. W. 186 ; 3 B. & P. 584 ; *Potter* v. *Lansing*, 1 Johns. 215 ; 6 Binney, 129 ; 6 S. & R. 429 ; 3 B. & Ald. 277.

That the carrier is, " in contemplation of law, the bailee of the person to whom and not by whom the goods are sent," is held in the following cases. 2 Exch. 1 ; 4 B. & C. 219 ; 6 Cl. & F. 600 ; 2 M. & W. 277, 653 ; 2 E. & B. 364 ; *Bull* v. *Robison*, 10 Exch. 342 ; 1 Conn. 60 ; *Spencer* v. *Hale*, 30 Vt. 314 ; 11 Ind. 55 ; 1 Gray, 536, and see Benjamin Sales, 577.

That a carrier is not liable for accidents and losses caused by the inherent defects or the evil character of the goods themselves, or by the bad packing or loading of the same, is well settled. Redf. Carriers, ss. 231, 236 ; 2 Redf. Railw. s. 186 ; Wharton Negligence, s 566 ; *Rixford* v. *Smith*, 52 N. H. 355.

The question of negligence is one of mingled law and fact, never to be withdrawn from the jury when the evidence is conflicting. Wharton Negligence, s. 42, and cases cited ; 23 Vt. 387 ; 24 Vt. 497.

*A. A. Nicholson* ( *J. C. Baker* with him), for plaintiff.

A common carrier is regarded by the law as an insurer of the property intrusted to him, and is legally responsible for acts against which he could not provide, from whatever cause arising, the acts of God and the public enemies only excepted. The loss of, or damage to, property in his possession, to be carried, is of itself sufficient proof of negligence, the maxim being that everything is negligence which the law does not excuse ; so that in all cases but those mentioned as excepted, his own faultlessness is no

Ross v. Troy & Boston Railroad Co.

discharge.. Angell Carriers, ss. 67, 148, 152, 153, 241; Story Bailm. ss. 489, 490, 491; Redf. Railw. 232.

A common carrier cannot by contract relieve himself from liability for the loss of goods delivered to him for transportation, that has been occasioned by his own or his servant's negligence, however slight, or where such negligence has in any degree contributed to such loss. *Michigan Southern R. R. Co.* v. *Heaton*, 37 Ind. 448; s. c. 10 Am. Rep. 89; *Lamb* v. *Camden & Amboy R. R. Co.* 46 N. Y. 271; s. c. 7 Am. Rep. 327; *Empire Transportation Co.* v. *Wamsutta Oil Co.* 63 Penn. 14; s. c. 3 Am. Rep. 515; *School District in Medfield* v. *Boston, Hartford & Erie R. R. Co.* 102 Mass. 552; *Hollister* v. *Nowlen*, 19 Wend. 234; Story Bailm. s. 570; *Beck* v. *Evans*, 16 East, 244; *Cole* v. *Goodwin*, 19 Wend. 251; *N. J. Steam Navigation Co.* v. *Mer. Bank*, 6 How. 344.

The exceptions show a state of facts implying actual, culpable negligence on the part of the defendant.

The payment of freight by the consignees, affords no criterion by which to determine the question, in whom vested the right of action. The true test is, rather, in whom was the legal title to the property at the time of the injury? This was a question of fact, and the court submitted it to the jury under proper instructions, and the jury must have found that at the time of the accident and injury complained of, the title and ownership of the property was in the plaintiff; and their finding is conclusive upon this point.

The opinion of the court was delivered by

BARRETT, J. The County Court seem to have regarded the facts stated by Hicks on cross-examination, as decisively fixing liability on the defendant for the injury to the property. That Hicks saw the articles as they had been fixed and fastened by the plaintiff, and thought the fastenings inadequate, seems to have been regarded as the vital fact working that result. The fastening, whose insufficiency caused the injury, had not been changed in any respect when Hicks saw it, nor when the accident happened. Had that fastening been sufficient, the accident would

47

not have happened.   Is the defendant chargeable with the conse-
quences of that insufficiency ?   We think not, in the sense in
which the County Court seems to have regarded it.   The under-
taking and duty of the defendant was, to transport and deliver
safely against all contingencies except the act of God, public
enemies, and acts of the parties shipping the property.   It was
the insurer against everything but those.   But as against them, it
was bound only to the exercise of reasonable care and diligence.

In this case, it undertook to transport the articles safely, in the
condition in which the plaintiff had packed them, insuring against
everything but that condition and its consequences, and bound to
use reasonable care and diligence against injury resulting from
that condition.   The car was procured by the plaintiff of another
railroad company, it was taken and loaded by the plaintiff in his
own way, and as loaded, came to defendant from another road,
and was taken by the defendant in the line of transportation to
Troy, in the condition in which the plaintiff had loaded and pre-
pared it for transportation.   The plaintiff did not ask nor expect
anything more to be done by the railroads in that respect.   It
stands for consideration the same as if the plaintiff had put the
articles into boxes, and had loaded them in his own way.   He
would have the risk of the sufficiency of the packing.   If damage
should occur by reason of insufficiency in that packing, the carrier
would not be liable for it.   If on the journey the boxes should
get broken and the packing loosened and insecure, it would be-
come the duty of the carrier to exercise reasonable and proper
care to secure the articles against injury on that account.   But
supposing the boxes to have remained whole, and it should not
appear that the contents had got loose, it would be difficult to
assign a reason why the carrier should be chargeable for injury
resulting solely from their having got loose, or from the boxes not
proving strong enough to hold them.

In the case before us, the testimony is that the blocking under
the large wheel that finally gave way and caused the injury, was
in its place, and did not appear to have been started or stirred at
all, and the only defect in it was, that it was insufficient in the
first place.

Ross *v.* Troy & Boston Railroad Co.

It seems incongruous for the plaintiff to claim that the defendant should overjudge him in a matter in which he assumed to judge and to do all that he required or supposed necessary to be done in the premises, and that the defendant should be responsible for the inadequacy of what the plaintiff adjudged and did. If things continued to be just as the plaintiff had fixed them, and nothing occurred in the transportation, against which the defendant was bound to exercise precautions beyond what the plaintiff had done, there would seem to be no ground for holding the defendant liable for the plaintiff's shortcoming.

We think the cause should have been submitted to the jury upon views conformable to what is above expressed, for them to find from the evidence whether the injury was caused by the failure of the defendant to exercise reasonable and proper care in respect to the fastenings and the transportation of the articles in question.

The other question, viz., as to the right of the plaintiff to bring this suit, we think, upon the evidence, is with the plaintiff.

Judgment reversed, and cause remanded.