plaintiff the sums of money that they had paid to him based upon an assumption that there were profits to which he was entitled.

I think, therefore, that the defendant was entitled to a judgment on the submission but without an affirmative judgment against the plaintiff.

MILLER, J., concurs.

---

BRADLEY v. LAKE SHORE & M. S. RY. CO. et al.

(Supreme Court, Appellate Division, First Department.   June 2, 1911.)

1. CARRIERS (§ 177*)—LOSS OF GOODS—CONNECTING CARRIERS—INFLAMMABLE ACIDS—INTERSTATE COMMERCE REGULATIONS.

Where a shipper had not complied with the regulations filed by the initial carrier with the Interstate Commerce Commission, reciting that nitric acid carboys would not be accepted for transportation unless packed with noncombustible dunnage, and the court charged that the filing of such regulation was notice to the shipper and his assignees of the rule, plaintiff could not recover from the connecting carrier for the destruction of acids not so packed and destroyed by combustion and explosion in transit; the failure to comply with the rule being the proximate cause of the loss.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 177.*]

2. CARRIERS (§ 177*)—CONNECTING CARRIERS—RELATION TO SHIPPER.

Where no partnership or other relation between connecting carriers was shown with reference to a transcontinental shipment of acid which would make an intermediate or connecting carrier liable for any negligence of the initial carrier, such initial carrier was the agent, not of the connecting carrier, but of the shipper with respect to billing and delivering the goods from its line to that of the connecting carrier.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 177.*]

3. CARRIERS (§ 177*)—CONNECTING CARRIERS—LOSS OF GOODS—NEGLIGENCE.

Where a connecting carrier, on receiving a car, was charged with notice that the car contained acids and that some of them were leaking, it was not for that reason chargeable with actionable negligence in failing to unload and warehouse the contents to save them from subsequent loss by fire or explosion due to the acid coming in contact with wood or other inflammable substance.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 177.*]

4. CARRIERS (§ 177*)—CONNECTING CARRIERS—LOSS OF GOODS—NATURE OF LIABILITY.

A connecting carrier is not an insurer of goods against damage resulting thereto while in its possession, from causes occurring before the goods were delivered to it and for which it was not responsible; it being, under such circumstances, only required to exercise reasonable care to save the property from further damage after the condition which caused the damage had been discovered or should have been discovered by it in the exercise of reasonable care.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 177.*]

5. CARRIERS (§ 121*)—INFLAMMABLE GOODS—DUTY OF SHIPPER.

A shipper of inflammable and explosive acids owed a common-law duty to give notice to the carrier of their nature, in order that they might be so designated on the shipping bill, a failure to perform which relieved the carrier from liability for the loss of the goods due to explosion and fire caused by a portion of the acids leaking from their containers.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 121.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Elvina C. Bradley, as ancillary administratrix of the estate of Herbert Bradley, deceased, against the Lake Shore & Michigan Southern Railway Company and another. From a judgment for plaintiff and from an order denying a new trial to the Lake Shore & Michigan Southern Railway Company, it appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

William Mann, for appellant.
William Harison, for respondent.

LAUGHLIN, J. This is an action by a shipper against a connecting common carrier for the loss of a car load of goods. It is predicated upon negligence; and the particular negligence charged against the appellant is that, on receiving the car from the Lehigh Valley Railroad Company, its employés discovered that the car contained a consignment of acid which was leaking, and did not with due diligence take proper steps to transfer the goods to a warehouse, or to another car. Within three hours after the car was delivered to appellant, and before it had been moved or in any manner interfered with by appellant, the leaking acid set fire to it, and the car and its contents were destroyed by fire and by explosions caused by the ignition of the fumes of the acid.

The action is on an assigned claim of the Baker & Adamson Company, a corporation engaged in the manufacture and sale of chemicals, and having its plant at Odenweldertown, a suburb of Easton, Pa. The shipper's plant was connected with the Central Railroad of New Jersey by a spur which it owned. For some years it had been accustomed to ship a few car loads of drugs and acids each month, and its business in this regard had been gradually increasing. When the shipper required a car, it notified the railroad company; and, when a car was furnished, it was placed on the spur owned by the shipper and loaded by the employés of the shipper; and then a shipping order, on blanks, evidently furnished by the carrier, was filled out by the shipper, and the shipper likewise filled out blank bills of lading attached to the shipping orders by perforated lines, and they were delivered to the agent of the common carrier and signed by him and redelivered to the shipper. In this instance the shipper in the customary manner called for a car in which to ship a car load of acid, and the railroad company thereupon delivered to the shipper an empty boxcar, which the employés of the shipper loaded with 92 carboys of acid, 5 cases of acids, 21 barrels of acids, 1 case of ammonia, 21 barrels of ammonia, 4 barrels of drugs, and 1 case of drugs, and filled out the shipping order under date of July 14, 1903, for the consignment of the car load of goods to F. W. Brown Company, San Francisco, Cal., via the Lehigh Valley, Lake Shore & Michigan Southern, Burlington & Quincy, and Santa Fé & Denver Railroads, and correspondingly filled out the bill of lading for signature by the agent of the initial carrier, and in due course it presumably was issued, although it was

not introduced in evidence. The acids were packed partly in carboys and partly in bottles, and the bottles had glass stoppers made fast with plaster of paris and tied with a cord dipped in wax to prevent it from rotting. The carboys had glass caps held down with zinc rings and waxed to prevent the escape of fumes and were packed in marsh hay in wooden boxes with hoods to protect the necks of the carboys. The bottles were likewise packed in barrels. There were, in part at least, two tiers of barrels and boxes. The evidence tends to show that this was the customary method employed by the shipper in packing such acids down to that time; but it appears that about six weeks prior thereto, and on the 1st day of June, 1903, the Jersey Central Railroad Company filed with the Interstate Commerce Commission a new classification of freight effective from June, 1, 1903, which contained a note stating that:

"Nitric acid carboys will not be accepted for transportation unless the carboys are packed with noncombustible dunnage."

It was not shown that actual notice of this regulation was given to the shipper prior to the shipment in question; but, at the request of the counsel for the defendant, the court instructed the jury that the filing of the classification with the Interstate Commerce Commission was notice to the plaintiff of the rules and regulations concerning the manner in which nitric acid should be packed, and that became the law of the case. The carboys in question contained a large quantity of nitric acid, and it is conceded that they were not packed in accordance with said regulation.

[1] In no event, therefore, could this recovery stand, for the inference is quite plain that failure on the part of the shipper to comply with said regulation was a proximate cause of the loss. The description of the goods entered in the bill of lading by the shipper followed the description contained in the shipping order, which has already been fully stated. The carboys and bottles contained not only nitric acid, but sulphuric, muriatic, acetic, and hydropfluoric acids as well, and there was no specification in the shipping order or bill of lading of what the said acids were, or that they were inflammable, explosive, or dangerous, although an express provision printed on the shipping order and stipulated to constitute part of the contract provided that every party, whether principal or agent, "shipping inflammable, explosive, or dangerous goods, without previous full written disclosure to the carrier of their nature, shall be liable for all loss or damage caused thereby and such goods may be warehoused at owner's risk and expense or destroyed without compensation." The only other information given to the carrier with respect to the nature of the goods was a card attached to the car by the shipper, the wording of which was:

"Acids. Handle carefully. Not to be transferred. The Baker & Adamson Chemical Company, Easton, Pennsylvania."

The car was delivered to the appellant by the Lehigh Valley Railroad Company at Buffalo, N. Y., about 10 p. m., on the evening of the 8th day of July, 1903. No waybill or other evidence was offered with respect to the information communicated by the initial carrier to the succeeding carrier; or by it to the appellant. It was not even

shown that the car, at the time it was received by the appellant, contained the card with respect to its contents; but, there being evidence that such a card was attached to the car by the shipper, perhaps the inference would be permissible, in the absence of other evidence, that it remained there. The employés of the appellant on receiving the car discovered that it was leaking, and the odor indicated that it contained some kind of acid. The appellant, as a connecting common carrier, was not chargeable with any knowledge that may have been acquired by the initial carrier and not communicated to it with respect to the contents of the shipment.

[2] No partnership or other relation between the carriers was shown which would make an intermediate or connecting carrier liable for any negligence on the part of the initial carrier, who was the agent, not of the connecting carrier, but of the shipper, with respect to billing and delivering the goods to a connecting carrier. Hinckley v. N. Y. C. & H. R. R. Co., 3 Thomp. & C. 281, affirmed 60 N. Y., 644; Elliott on Railroads (2d Ed.) vol. 4, §§ 1443a, 1447, 1444, 1445, 1448.

[3] Appellant, on receiving the car, was therefore chargeable merely with knowledge of the fact that the car contained acids and that some of the acids were leaking. The evidence tends to show that strong nitric acid in sealed carboys would, owing to sudden changes of temperature, tend to decompose and give off fumes which might burst the carboys, and that such acid is very dangerous if brought in contact with wood or other inflammable substance, and may set it on fire.

It is immaterial to the decision of the question with respect to the appellant's liability whether the leak of acid was caused by negligence of the shipper in preparing it for shipment or in loading it, or by the negligence of the initial or second carrier, or without negligence on the part of any one. There is no evidence, and it is not claimed, that the appellant was in any manner responsible for the leak. There is no evidence with respect to the extent of the damage done to the goods before the car was received and accepted by the appellant; nor is there any evidence with respect to the amount or value of the consignment that could have been saved had the appellant at once opened and transferred the contents of the car, and yet there has been a full recovery as though the consignment had been received in perfect condition and wholly destroyed through the negligence of the appellant. Moreover, it is mere speculation to say that the fire and explosions would not have taken place, owing to the leak which existed before the appellant received the car, had an attempt been made at once to transfer the contents of the car. On its having discovered that the car was in a leaky condition, it was marked to be transferred to a transfer point of the appellant on the Buffalo Creek Railroad track about 1½ miles distant from the point at which the car was received by the appellant. It appears that the appellant only had one switch engine on hand at that time, and that it was needed for making up trains. Moreover, the employés of the appellant charged with the duty of receiving cars from other railroads were of

the opinion that it would be dangerous to move the car during the night that distance virtually through the heart of the city and through railroad yards where torches and lanterns were necessarily used.

[4] A connecting common carrier is not an insurer of goods against damages resulting thereto while in its possession, but from causes occurring before the goods were delivered to it and for which it was not responsible. At most it is only required to exercise reasonable care to save the property from further damage after the condition which is causing the damage has been discovered or should be discovered by it in the exercise of reasonable care. In the case at bar the shipper was clearly negligent in not specifying, in accordance with the requirements of the shipping order, the fact that the acids were inflammable and dangerous, which was well known to it as the manufacturer thereof. Had this been done, it may well be that the initial carrier would have insisted upon a compliance with the provisions of its classification filed with the Interstate Commerce Commission, and that the acids would have been differently packed before being shipped. Each connecting carrier on a through bill of lading, as this doubtless was, although it was not introduced in evidence, is entitled to the protection afforded by the shipping contract.

[5] And, moreover, the duty of giving notice that the acid was explosive and dangerous devolved on the shipper at common law (Barney v. Burnstenbinder, 64 Barb. 212; Wellington v. Downer Kerosene Oil Co., 104 Mass. 64; Boston & Albany R. Co. v. Shanly, 107 Mass. 568; Parrot v. Wells Fargo & Co., 15 Wall., 524, 21 L. Ed. 206), and the safety and protection of life and property require the rigid enforcement of that duty. That alone would relieve the appellant from liability.

As already stated, however, we are of opinion that the plaintiff failed to show a cause of action against the appellant on the theory of its negligence.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.