THE ST. LOUIS-SAN FRANCISCO RY. CO. *v.* THE GLOW ELECTRIC CO.

(Decided April 29, 1929.)

*Messrs. Harmon, Colston, Goldsmith & Hoadly,* for plaintiff in error.

*Mr. George A. Hamma,* for defendant in error.

Ross, J.  This case comes into this court on error from the court of common pleas of Hamilton county, where a judgment was rendered against the St. Louis-San Francisco Railway Company, defendant below, plaintiff in error here.

The issues are found in the second amended petition and in the answer, refiled to the second amended petition.

It is alleged on the part of the defendant in error, the Glow Electric Company, that it, through the shipper, delivered to the plaintiff in error, the railway company, at Clinton, Oklahoma, for delivery to the shipper at Cincinnati, upon notice to the defendant in error, a shipment consisting of an engine, generator, and box of parts; that the railway company loaded the shipment; that at the time of delivery to the railway company the shipment was in

an unbroken and merchantable condition; that the railway company accepted the shipment in consideration of the payment of the published tariff rate of freight, agreeing to transfer the shipment from the point of shipment to destination; that the railway company delivered said shipment to its connecting carriers; that it arrived in a badly damaged and unmerchantable condition; that the railway company carelessly and negligently handled the shipment, in that it was delivered in a broken and unmerchantable condition; and that the railway company failed to deliver it in the same condition that it was received, and negligently permitted it to be damaged in transit.

The amount and character of the damage was alleged, and an itemized statement of necessary repairs is attached to the second amended petition. It was further alleged that a claim was filed with the railway company and declined.

The answer to the second amended petition reserves an objection to the jurisdiction of the court; admits delivery of a carload of machinery; and that the railway company undertook to transport and deliver to the shipper the shipment in question, and that through its connecting carriers the shipment was delivered to the defendant in error.

The extent and manner of the damage to the shipment, the careless and negligent handling of it, and causing or permitting it to be damaged in transit, together with all allegations not denied or admitted, were specifically denied.

The evidence shows that the shipment consisted principally of two large pieces of machinery, one weighing some 8,000 pounds, and approximately

seven and one-half feet in height, and being a generator, which was loaded at the rear end of the car; and the other being a large piece of machinery consisting of an engine weighing about 3,500 pounds, which was loaded at the forward end of the car. There was also a box of parts in the car. The shipment was loaded by the shipper, and there is evidence that the carrier's employees inspected it before the car was sealed.

Photographs were introduced in evidence showing the condition of the machinery, and the interior and exterior of the car upon arrival. These photographs indicate that the large generator had been loaded crosswise in the car; the shaft running in a direction from front to rear of the car. The photographs indicate that this piece of machinery had broken away from its fastenings and the timbers bracing it in the car, and had toppled over, and that in doing so it had broken the base of the casting, consisting of the housing for the rotor.

It is claimed that the photographs show that the engine had also moved forward, and one of the photographs indicated that the forward end of the car was bulged out. The railway company insists that this bulging was the normal condition of the car, and was not caused by the movement of the shipment within the car.

The plaintiff claims that the damage to the shipment was caused by the negligent operation of the car by the railway company.

On the other hand, it is claimed by the railway company that the damage was due to improper loading by the shipper, and that the generator should have been loaded with the shaft across the

car, thus taking the strain off the supporting casting of the generator, which had given away.

While there was evidence pro and con introduced upon the loading of the car, the outstanding feature is that this issue—that the improper loading caused the damage—was not made by the pleadings, nor was the answer of the railway company at any time amended to conform to the evidence in this regard by the allegation of a special defense.

The tariff of the railway company was introduced in evidence, and this tariff required the shipper at his own expense to load and unload cars, and to observe carrier's rules regulating safe loading, which rules required secure blocking and bracing, to make freight secure for shipment. These regulations are as follows:

### Rule 27.

"Section 1. Owners are required to load into or on cars freight for forwarding by rail carriers, and to unload from cars freight received by rail carriers, carried at carload ratings.

"Section 2. Owners are required to load into or on cars heavy or bulky freight for forwarding by rail carriers, and to unload from cars heavy or bulky freight received by rail carriers, carried at less than carload ratings, which cannot be handled by the regular station employees or at stations where the carriers' loading or unloading facilities are not sufficient for handling.

"Section 3. Owners must observe carriers' rules regulating the safe loading of freight and protection of equipment. Lading must be securely blocked or braced and when in closed cars must be away from

car doors, and weight of lading must be approximately the same on each side of car.

"Section 4. When articles are loaded on open cars small detachable parts must be removed and placed in wooden boxes or secured within the article. Boxes must be encircled at ends with iron straps and securely attached to the article or to the floor of car. Such boxes must be specified on shipping orders and bills of lading. Fragile parts not detached must be protected."

## Rule 30.

"Unless otherwise provided:

"Section 1. (a) Temporary blocking, flooring or lining, racks, standards, strips, stakes, or similar bracing, dunnage or supports, not constituting a part of the car, when required to protect and make carload freight secure for shipment, must be furnished and installed by shipper and at his expense.

"(b) Shippers must observe carrier's rules regulating safe loading of freight and protection of equipment. Freight in closed cars must be so loaded as to prevent any contact with car doors during transit, and weight of lading must be approximately the same on each side of car.

"(c) Bulkheads, partitions, temporary doors or door protection, when required to protect or make bulk freight secure for shipment, must be furnished and installed by the shipper and at his expense.

"(d) No allowance will be made for the weight of the material specified in Section 1 (a), (b) and (c), and the transportation charge therefor shall be at the rate applicable on the freight which it accompanies.

"Section 2. (a) An allowance of the actual weight, but not more than 500 pounds per car, will be made for racks, stakes, standards, strips, braces or supports used by shippers on flat or gondola cars when such material is required for safe transportation in the loading of carload freight, provided that in no case shall less than the established minimum carload weights be charged, and also provided that shipper must specify on shipping order the weight of the material used, otherwise no allowance will be made. If the weight of the racks, stakes, standards, strips, braces or supports is more than 500 pounds per car the excess will be charged at the rate applicable to the lading of the car.

"(b) No allowance in weight will be made for dunnage, blocking or bracing material used by shippers for part carloads in excess of full carload or carloads which are entitled under the provisions of Rule 24 to the carload rate."

A number of assignments of error are alleged by the plaintiff in error: (1) That the trial court erred in the admission of evidence tending to prove an estoppel of the carrier to rely on the failure of the shipper to properly load, brace, and block the machinery in the car; (2) that the court erred in its charge to the jury; (3) that there is no evidence to sustain the amount of the verdict; (4) misconduct of counsel for the defendant in error; (5) that the verdict is against the weight of the evidence.

Before proceeding to consider these assignments of error severally, it is necessary to determine, first, what issues were raised by the pleadings in this case, and what is the law applicable to such issues. We

feel that this general consideration will answer most of the criticisms of counsel for plaintiff in error.

The state courts, in passing upon the liability of common carriers for the carriage of interstate shipments, are to be governed by the acts of Congress and the construction of those acts by the federal courts. *Toledo & Ohio Central Ry. Co.* v. *S. J. Kibler & Bros. Co.,* 97 Ohio St., 262, 119 N. E., 733; *Cincinnati, N. O. & T. P. Ry. Co.* v. *Rankin,* 241 U. S., 319, 36 S. Ct., 555, 60 L. Ed., 1022, L. R. A., 1917A, 265; *Anthony Carlin Co.* v. *Hines, Dir. Genl. of Rds.,* 107 Ohio St., 328, 140 N. E., 99.

But matters in pleading, however, are still subject to the construction of the state courts. *Cincinnati, N. O. & T. P. Ry. Co.* v. *Rankin,* 241 U. S., 319, 326, 36 S. Ct., 555, 60 L. Ed., 1022, L. R. A., 1917A, 265.

The obligation of an initial carrier of freight in interstate shipments is fixed by the acts of Congress, and in particular the Act of Congress of February 28, 1920, amended July 3, 1926, c. 761, 44 Stats. at L., 835, and March 4, 1927, c. 510, Section 3, 44 Stats. at L., 1448, Title 49, Section 20, paragraph 11, U. S. Code. We quote the pertinent portion of this section:

"(11) Liability of initial carrier for loss; limitation of liability; notice and filing of claim. Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be

liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State, Territory, or the District of Columbia to a point in another State or Territory, or from a point in a State or Territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, or for transportation wholly within a Territory shall be liable to the lawful holder of said receipt, or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the

Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void."

The effect of this act, as amended, has been clearly set out in the case of *Adams Express Co.* v. *Croninger,* 226 U. S., 491, 504, 505, 506, 33 S. Ct., 148, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257. At page 506 of 226 U. S., 33 S. Ct., 148, 152, the court says:

"What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue 'for any loss, damage, or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage, or injury, from any and every cause, would be to make such a carrier an absolute insurer, and liable for unavoidable loss or damage, though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words, 'any loss or damage,' would be to ignore the qualifying words, 'caused by it.' The liability thus imposed is limited to 'any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered;' and plainly implies a liability for some default in its common-law duty as a common carrier."

See, also, 10 Corpus Juris, "Carriers," Section 206, pages 161, 162:

"Federal Legislation. Nothing in the Interstate Commerce Act of 1887 or in the acts amending it, known as the Elkins Act and the Hepburn Act, in any manner affects the rule at common law with ref-

erence to the liability of the common carrier for its negligence or that of its servants in the transportation of property by interstate shipments. Likewise it is held that there is nothing in the Carmack Amendment which in any way affects this rule. Indeed it is declared by the supreme court of the United States that the provision of the Carmack Amendment making the initial carrier liable to the holder of a shipping receipt for any loss or damage caused by it or by any connecting carrier, and that no contract, receipt, rule, or regulation shall exempt such a common carrier from the liability hereby imposed is 'a statutory declaration that a contract of exemption from liability for negligence is against public policy and void.' Under the Carmack Amendment an agreement to release a carrier for part of a loss due to negligence is no more valid than one by which there is a complete exemption."

See, also, *Chicago & Eastern Ill. Rd. Co.* v. *Collins Produce Co.*, 249 U. S., 186, 192, 39 S. Ct., 189, 63 L. Ed., 552.

Under the Act of August 29, 1916, c. 415, Section 21, 39 Stats. at L., 541, Title 49, Section 101, U. S. Code, it is provided how a carrier may exempt itself for damages caused by improper loading:

"The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading."

In the instant case there is nothing appearing upon the bill of lading, introduced in evidence, indicating that the carrier availed itself of the provisions of this section.

It is urged by the plaintiff in error that the shipper failed to comply with the tariff regulations as to loading and bracing, and that, having failed to comply, defendant in error could not recover.

Neither the tariff regulations nor their breach were alleged by the carrier as a special defense. They were admitted in evidence, however, and evidence was also admitted tending to show the proper and improper loading of the car, which evidence was also indicative of the compliance or failure to comply with the regulations.

Under the general allegation that the shipment was in good condition, or, as alleged in the petition, "in an unbroken and merchantable condition," or in the case of a shipment of machinery, such as is involved in this case, it is incumbent upon the plaintiff to show by a preponderance of the evidence that the shipment was properly loaded. This the defendant in error did to the satisfaction of the jury.

The defense of improper loading is only available to a carrier when the improper loading is the direct cause of the loss or damage. 10 Corpus Juris, "Carriers," Section 145, page 119.

The carrier can refuse to accept the goods if they are not loaded or packed in accordance with the published tariff regulations, but, once having accepted them the common-law liability attaches, and it is only when the failure to comply with the regulations amounts to such improper loading as to constitute the proximate cause of the loss or damage

that failure to comply with the regulations will constitute an excuse and defense to such common-law liability. It is then not the violation of the regulations that can be advanced as a defense, but the improper loading, constituting the proximate cause of the loss or damage. *Bradley* v. *Lake Shore & M. S. Ry. Co.*, 145 App. Div., 312, 129 N. Y. S., 1045, 1047; *Levine* v. *Duluth & Iron Range Rd. Co.*, 171 Minn., 205, 214 N. W., 17; *Union Express Co.* v. *Graham*, 26 Ohio St., 595; *U. S. Express Co.* v. *Backman*, 28 Ohio St., 144, 157; *Gaines* v. *Union Transp. & Ins. Co.*, 28 Ohio St., 418, at page 438.

The carrier in the instant case relied upon a defense which, to all intents and purposes was nothing more than a general denial. It did not allege the existence of special tariff regulations as to loading and bracing; nor did it allege their breach; nor did it allege that the failure to comply with said regulations amounted to improper loading; nor that the loss or damage, if any, was due to improper loading.

There are a number of exceptions to the carrier's common-law liability. The carrier can excuse himself from liability by showing that the loss or damage was due: First, to an act of God; second, destruction or conversion by the military forces of the public enemy; third, destruction or injury to the goods due to their inherent nature; and, fourth, where the injury to or destruction of the property while in course of transportation is caused by some act of the owner, such as improper loading. See 10 Corpus Juris, 111, "Carriers," Sections 132, 133, 148 and 135.

It is apparent, therefore, that, while it is a part of the plaintiff's case to show by a preponderance

of the evidence that the shipment was properly loaded, the carrier, in order to excuse itself from its common-law liability, on the ground of improper loading by the shipper, must allege and prove that such improper loading was the proximate cause of the loss or damage occurring. See 10 Corpus Juris, 121, "Carriers," Section 147; Roberts Fed. Liab. of Carriers (2d Ed.), vol. 1, pages 714, 715, Section 363.

It is urged that the defendant in error not only assumed the burden of proving proper loading, by the introduction of evidence to this effect, but that, having assumed this burden, it was necessary for the defendant in error to prove compliance with the tariff regulations as to loading and bracing. We do not think that this conclusion follows, for the reason just stated, and especially under the issues as presented by the pleadings. On the other hand, it is claimed by the defendant in error that, by the acceptance of the shipment after inspection, no claim being made that there was any concealed or latent defect in the loading or the shipment itself, the carrier waives its right to set up improper loading, proximately causing the damage, as an excuse and defense. While there is some authority for such a rule, as in *Thomson* v. *Chicago, M. & St. P. Ry. Co.,* 195 Wis., 78, 217 N. W., 927, and *Newman* v. *Seaboard Air Line Ry. Co.,* 188 N. C., 341, 124 S. E., 627, we hold that this is not the rule that should be applied.

If the carrier is able to show that the loss or damage was due to improper loading, it has a complete defense, regardless of whether or not the shipment was inspected by its employees. It is a conclusion for the jury to determine upon all the evidence

whether the loss or damage is due to the manner in which the shipment was loaded. *Ross* v. *Troy & Boston Rd. Co.,* 49 Vt., 364, 24 Am. Rep., 144, 146.

It is universally considered that a common carrier of freight cannot covenant against its own negligence. This is the effect of the acts of Congress quoted, and, if the tariff regulations are to be interposed as such a contract, they are unavailing. See 10 Corpus Juris, 161, "Carriers," Section 206; Roberts Federal Liability of Carriers (2d Ed.), vol. 1, Section 373, page 725.

We come now to the several assignments of error.

I. It is urged that the court committed error, in that evidence was admitted by the court, over the objection of counsel for the plaintiff in error, indicating that the shipment had been inspected by one of the employees of the carrier, and approved by this employee, who was a cashier in the office of the carrier's freight depot. While this evidence may have been admitted upon the theory that its proof constituted a waiver by the carrier, it was not admissible under such a construction. It was admissible, however, to show that the shipment was in good condition and properly loaded at the time of its delivery by the shipper to the carrier. Had the issues been properly made by the pleadings, it would have been the duty of the trial court to have limited this evidence, under proper instructions, but under the issues as presented by the pleadings, we can see no error in the admission of this evidence. It was admissible to show that the carrier had accepted the goods after inspection, and as before stated, while this does not estop the carrier from proving that the loss was proximately caused by improper loading,

the acceptance, especially after inspection, and in the absence of latent defects, is sufficient to impose upon the carrier his common-law liability.

II.   It is claimed that the trial court erred in its instruction to the jury by giving the following charge:

"The rule of law is that a carrier—that is a carrier of freight, and that would be a common carrier —is responsible for any damage to any shipment made upon its lines unless that damage was occasioned by an act of God, and by an 'act of God' we mean a flood or tornado or volcano or something that is without the intervention or control of man, unless there has been some rule of law or some agreement to the contrary.

"It is the claim of the defendant in this case, by the classification that is made by the Interstate Commerce Commission, that the shipment was not properly loaded upon the car of the defendant, and that the damage that resulted was the result of such improper loading.  The burden of proof upon that matter is upon the defendant company to prove that the damage was due to improper loading on the part of the plaintiff, and that the defendant must prove by a preponderance of the evidence, and if the defendant has so shown that fact by a preponderance of the evidence, then your verdict must be for the defendant; otherwise the plaintiff, if it has proven that the shipment was made on or about the date specified in the petition; that the delivery was made to the defendant company (and if it was properly loaded upon the cars of the defendant company), and that when it arrived in Cincinnati that it was damaged, then the plaintiff would be entitled to

recover, provided it has proven those matters by a preponderance of the evidence.''

This is the charge as it appears in the record. The parenthetical portion was omitted by counsel for plaintiff in error in quoting the charge in his brief.

If the words in the parenthetical clause were absent from the mind of counsel, as they were absent from the quotation in the brief, it is easy to see how the charge would be considered objectionable. We think the charge given stated the law applicable to the facts in this case, and to the issues as presented by the pleadings, and was in accordance with the rules we have previously stated.

The placing of the burdens of proof by the court in its charge, under the issues in this case, was not erroneous.

In the case of *Chicago & Northwestern Ry. Co.* v. *C. C. Whitnack Produce Co.*, 258 U. S., 369, 42 S. Ct., 328, 66 L. Ed., 665, the first proposition of the syllabus is:

''When goods moving in interstate commerce upon a through bill of lading are delivered in bad condition and the evidence shows that they were sound when received by the initial carrier but does not affirmatively establish where the loss occurred, there is a common-law presumption, applicable under the Carmack amendment, against the delivering carrier, that the injury occurred on the delivering carrier's line.'' See, also, *Chicago & Eastern Illinois Rd. Co.* v. *Collins Produce Co.*, 249 U. S., 186, at page 192, 39 S. Ct., 189, 63 L. Ed., 552.

It is urged that the court committed error in refusing to give the following charge, requested by the

plaintiff in error at the close of the general charge:

"The defendant was not under any duty at the time it received this car loaded with this machinery from the shipper to ascertain whether or not it had been placed in the car by the shipper in such position as that it would be safe against ordinary shocks of transportation, either in respect to its position in the car or in respect to its being sufficiently braced, blocked and supported."

The court had previously charged the jury properly upon the burdens of proof upon the carrier and shipper. The giving of this instruction would add nothing that was not included in the instruction given. Had this been a special request, in writing, before argument, of course the instruction would have been proper and required for other obvious reasons.

It is further urged that the court committed error in refusing the following charge, also requested at the close of the general charge:

"The defendant was under no duty at the time it received this car of machinery at Clinton, Oklahoma, to provide a person skilled in loading, bracing and blocking machinery of the kind in controversy in this suit, either to assist in loading, bracing and blocking it or to direct or approve or disapprove of the shipper's loading, bracing and blocking."

This charge was given by the court, but with the following addition, which is also assigned as error:

"But if it did examine and approve of the shipper's loading, bracing and blocking, then it cannot complain because such loading, bracing or blocking was not in accordance with any requirement of the law."

The court had previously correctly covered the subject-matter of the portion of this charge which was refused standing alone.

The court had previously charged that it was incumbent on the defendant in error to prove by a preponderance of the evidence that the goods were properly loaded. This requirement necessarily relieved the plaintiff in error from the burden mentioned in its special request.

We think that the addition given by the court taken by itself would be prejudicial error, in that, as we have previously pointed out, acceptance by the carrier does not preclude it from proving that the improper loading was the proximate cause of the damage. The natural interpretation of the language used would preclude the carrier from such a defense. However, the effect of this instruction, erroneous as it was, we think was neutralized by the correct statement of the law elsewhere in the general charge.

We adopt the language of the court in the case of *Ochsner, Admr.,* v. *Cincinnati Traction Co.,* 107 Ohio St., 33, at pages 42 and 43, 140 N. E., 644, 647:

"We are therefore not prepared to say that prejudicial error intervened in this record, in the light of the court's instructions taken as an entirety and the admitted evidence in the case, although we do not approve the addition to the charge standing by itself and considered apart from the charge as a whole."

III. It is urged that the evidence does not sustain the amount of the verdict. We have examined the record, and feel that the amount of the verdict is sustained by the evidence.

IV. We think that the jury was properly instructed to disregard the improper remarks of counsel, and that no prejudicial error intervened by reason of the statements made, warranting a reversal of the judgment.

V. It is urged that the verdict is manifestly against the weight of the evidence. We have examined the record, and hold that there was sufficient evidence to sustain the verdict, when the issues made by the pleadings are considered. We see no reason to disturb the verdict, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CUSHING, P. J., and HAMILTON, J., concur.