THOMSON, Plaintiff, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY and another, Defendants.

*January 11—February 7, 1928.*

*Carriers: Insufficient loading: Accepting shipment without objection: Rights of consignee for improper loading by consignor: Pleading: Alternative cause of action.*

1. A common carrier may not claim that injury to goods in transportation was due to insufficient crating, boxing, packing, or loading where this was discoverable by the carrier upon ordinary observation and inspection at the time when the shipper tendered the goods for transportation, though the rule is otherwise if the insufficiency was not discoverable by ordinary observation and inspection.  p. 85.

2. A machinery company which breached its contract to properly load a drag line on a railway car is liable to the assignee of the consignee for the resulting injury to the drag line in transportation, regardless of whether the railway company failed to perform its duty as a common carrier or might, in an action by such consignee, be estopped to say that the drag line was improperly and insecurely loaded.  p. 86.

3. The exclusion of evidence that the railway company was in the habit of making flying switches, which subject the cars and goods to unusual and unreasonable stress and strain, if error, was harmless, where the car on which the damaged goods were loaded was at no time part of a flying-switch movement. pp. 86, 87.

4. The question of the value of the drag line being for the jury, its finding in that respect, being supported by ample evidence, is sustained.  p. 87.

[5. Although no question respecting the form or sufficiency of the complaint in this action is raised, it is set forth in full in the statement of facts because it is deemed a model pleading under sec. 260.11, Stats.]  p. 83.

APPEAL from a judgment of the circuit court for Milwaukee county: AUGUST E. BRAUN, Circuit Judge.  *Affirmed.*

Contract.  This action was begun on the 12th day of March, 1925.  Judgment from which the appeal was taken was entered on the 4th day of February, 1927.

This action was begun for relief in the alternative against

the defendant *Hunter Machinery Company* and the *Chicago, Milwaukee & St. Paul Railway Company,* hereinafter called the railway company. The complaint is as follows:

"Now comes the plaintiff, by Miller, Mack & Fairchild, his attorneys, and for his cause of action against the defendants above named alleges as follows:

"1. *Chicago, Milwaukee & St. Paul Railway Company* now is and at all times hereinafter mentioned was a corporation organized and existing under and by virtue of the laws of the state of Wisconsin, and is a common carrier engaged in the business of carrying passengers and freight for hire in the state of Wisconsin and between points in the state of Wisconsin and points in other states.

"2. *Hunter Machinery Company* now is and at all times hereinafter mentioned was a corporation organized and existing under and by virtue of the laws of the state of Wisconsin.

"3. On or about the 29th day of July, 1924, the plaintiff purchased from John F. Connell Company, of Chicago, Illinois, a certain drag line hereinafter more particularly referred to, which was then located in or near the city of Milwaukee, Wisconsin, one of the terms of said purchase being that said drag line was to be loaded by John F. Connell Company for shipment on a car at Milwaukee, Wisconsin, in proper manner.

"4. Plaintiff alleges upon information and belief that John F. Connell Company was not then the owner of said drag line, but that he subsequently and on or about the 31st day of July, 1924, purchased the same from the *Hunter Machinery Company* under a written contract, one of the terms of which was that the said drag line was to be shipped f. o. b. Milwaukee, Wisconsin, to Omaha, Nebraska, loaded on cars by the *Hunter Machinery Company,* and said contract, together with all claims thereunder against the defendant *Hunter Machinery Company,* was assigned to the plaintiff by John F. Connell Company.

"5. Pursuant to the said contract between John F. Connell Company and *Hunter Machinery Company,* said *Hunter Machinery Company* loaded said drag line on cars at Milwaukee, Wisconsin, and on or about the 14th day of August,

1924, procured from the defendant *Chicago, Milwaukee & St. Paul Railway Company* a bill of lading pursuant to the terms of which said drag line was consigned by said *Hunter Machinery Company* to its own order with directions to notify *John J. Thomson* at Omaha, Nebraska, and said bill of lading provided that said drag line should be shipped to Omaha, Nebraska, and said *Chicago, Milwaukee & St. Paul Railway Company* issued said bill of lading and thereby agreed and undertook to ship the said drag line from Milwaukee, Wisconsin, to Omaha, Nebraska. Upon the issuance of said bill of lading by the *Hunter Machinery Company,* the said bill of lading was indorsed in blank by said *Hunter Machinery Company* and as so indorsed was forwarded to Omaha, Nebraska, with directions to deliver said bill of lading to *John J. Thomson* upon the payment of the draft thereto attached, and said *John J. Thomson* did on or about the 19th day of August, 1924, pay said draft and the bill of lading was thereupon delivered to him.

"6. The defendant *Chicago, Milwaukee & St. Paul Railway Company,* after the issuance of the bill of lading and on or about the 15th day of August, 1924, or soon thereafter, proceeded to ship the said drag line to Omaha, Nebraska, but on or about the said day, and while the said drag line was still in the possession of said defendant railroad company and while it was in transit from Milwaukee, Wisconsin, to Omaha, Nebraska, the said drag line was damaged to such an extent that it became and was a total wreck and without value.

"7. On or about the 22d day of August, 1924, and after the payment by the plaintiff of the draft above mentioned, the defendant *Chicago, Milwaukee & St. Paul Railway Company* notified the plaintiff that the said drag line was damaged, and such notice was the first notice that the plaintiff obtained of the fact that said drag line had been damaged while in transit.

"8. It is the claim of the defendant *Hunter Machinery Company* that the said drag line was properly loaded by it and that the loss or damage arising from the wreck of said drag line while in transit as aforesaid occurred without any negligence on its part in the loading thereof, and that the loss and damage thereto arising from the wreck thereof occurred through the negligence and carelessness of the rail-

road company, its servants, agents, and employees in the handling of the said shipment, and that said railroad company inspected or undertook the inspection of the loading of said drag line and approved the method and manner and sufficiency of such loading and accepted the said drag line for shipment and issued its bill of lading as aforesaid after such inspection and after causing the *Hunter Machinery Company* to understand that it had inspected and approved the method, manner, and sufficiency of the loading of such shipment.

"9. It is the claim of the defendant *Chicago, Milwaukee & St. Paul Railway Company* that the said drag line was improperly and insecurely loaded, and that the *Hunter Machinery Company* or those who acted for it in the loading thereof loaded the said drag line in an improper, negligent, and careless manner, and that by reason thereof the said drag line became loosened from its fastenings and from the car upon which it was loaded, and that as a result thereof said drag line was damaged, and that the said *Chicago, Milwaukee & St. Paul Railway Company,* its agents, servants, and employees were without negligence in the handling and shipment of the same.

"10. Plaintiff is in doubt and is unable to determine whether the matters set forth in the claim made by the *Hunter Machinery Company* or the matters set forth in the claim of the *Chicago, Milwaukee & St. Paul Railway Company* are true and correct and the facts in the case, and alleges upon information and belief that either the matters claimed by *Hunter Machinery Company* to be the facts are true and correct or the facts set forth in the claim of the *Chicago, Milwaukee & St. Paul Railway Company* are true and correct, and that it is entitled to relief and judgment against the *Hunter Machinery Company* if the facts are as set forth in the claim of the *Chicago, Milwaukee & St. Paul Railway Company* as herein set forth, or is entitled to relief and judgment against the *Chicago, Milwaukee & St. Paul Railway Company* if the facts are as set forth in the claim of the *Hunter Machinery Company* as herein set forth, and that *Chicago, Milwaukee & St. Paul Railway Company* and the *Hunter Machinery Company* are joined as defendants in this action for the reason that the right of the plaintiff to relief exists in the alternative against them.

"11. Claim for loss and damage to the said drag line was duly given to the *Chicago, Milwaukee & St. Paul Railway Company* in accordance with the terms and conditions of the bill of lading.

"12. Said drag line at the time of the damage to it was of the value of six thousand seven hundred fifty dollars ($6,750), and by reason of the loss thereof and damage thereto plaintiff has suffered damages in the sum of six thousand seven hundred fifty dollars ($6,750).

"Wherefore plaintiff prays for judgment against the *Chicago, Milwaukee & St. Paul Railway Company* and *Hunter Machinery Company* in the alternative in the sum of six thousand seven hundred fifty dollars ($6,750), together with interest thereon from August 15, 1924, and his costs and disbursements in this action.

"MILLER, MACK & FAIRCHILD,    (Signed)
"Plaintiff's Attorneys."

The defendant *Hunter Machinery Company* answered, made certain admissions and denials, alleged that the car upon which was loaded the drag line was accepted by the railway company without any notation upon the bill of lading, alleged that the damage done to the drag line was due to the negligence of the carrier or to parties other than the *Hunter Machinery Company,* and prayed judgment dismissing the plaintiff's complaint. The defendant railway company answered, making certain admissions, denials, and allegations which are not material here.

There was a special verdict, and the jury returned the following:

"(1) Were both the caterpillar and rotating portions of the drag line so fastened to the car that, under ordinarily careful handling in freight transportation, it would be carried safely from Milwaukee to Omaha? *A.* No.

"(2) If you answer the first question 'No,' then was such unsafe fastening the proximate cause of the damage to the drag line? *A.* Yes.

"(3) If you answer the first question 'No,' then ought such unsafe fastening of the drag line have been apparent to the ordinary observation of the employees of the railroad

Thomson v. Chicago, M. & St. P. R. Co. 195 Wis. 78.

company or to such inspection as such employees could readily make? *A.* Yes.

"(4) What was the reasonable market value of the drag line at Milwaukee at the time it was loaded? *A.* $6,250.

"Dated this 22d day of December, 1926."

Upon the verdict the plaintiff had judgment against the *Hunter Machinery Company* for the amount of damages found by the jury. As to the railway company the complaint was dismissed. The defendant *Hunter Machinery Company* appeals from the judgment against it.

In order to save its rights if the judgment against the *Hunter Machinery Company* should be reversed, the plaintiff appeals from that part of the judgment which dismissed the plaintiff's complaint as to the railway company.

For the plaintiff there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Bert C. Vandervelde,* all of Milwaukee.

For the defendant *Chicago, Milwaukee & St. Paul Railway Company* there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and oral argument by *Mr. Trump.*

*William J. Morgan,* attorney, and *Edgar L. Wood,* of counsel, both of Milwaukee, for the defendant *Hunter Machinery Company.*

ROSENBERRY, J. The complaint in this case is set out in full although no question respecting its form or sufficiency is raised. A number of recent cases, among which is *Lukken v. Hanover Fire Ins. Co.* 194 Wis. 569, 217 N. W. 404 (decided January 10, 1928), indicate that there is a good deal of confusion in the minds of lawyers as to the proper form of complaint under sec. 260.11, Stats., which provides:

"A plaintiff may join as defendants persons against whom the right to relief is alleged to exist in the alternative, although recovery against one may be inconsistent with recovery against the other."

We regard the complaint in this case as a model pleading under that section. After stating the facts and setting forth the claim of each defendant, the complaint proceeds: "Plaintiff is in doubt and is unable to determine whether the matters set forth in the claim of the respective companies are true and correct," and alleges that they are joined as defendants in the action for the reason that the right of the plaintiff to relief exists in the alternative against them. The prayer for judgment is likewise in the alternative. While pleadings should be liberally construed and no litigant having a cause of action should be sent out of court, carefully prepared lawyerlike pleadings are nevertheless a great aid to the administration of justice. The amount of unlawyerlike, sloppy, inaccurate pleadings that finds its way into courts of justice is disheartening, and indicates either an unbelievable lack of training and ability or an utter indifference and disregard by attorneys of the most elementary and fundamental principles of pleading. Liberalized pleadings may become a hindrance rather than an aid to the attainment of justice. We are moved to make these observations by the difficulties which we have in ascertaining the claims of parties as set out in their pleadings. In a case decided herewith, where no comment is made in reference thereto, the cause of action set out in the complaint was entirely abandoned and recovery was had upon a wholly different legal theory without regard to pleadings. While the issues were in fact litigated, a better result would have been obtained if the pleadings had disclosed in the first instance the claims of the respective parties.

The principal question raised here by the *Hunter Machinery Company* is this: it claims that the car as loaded by it was accepted by the railway company, and that by such acceptance any liability which the *Hunter Machinery Company* had by reason of its failure properly to load the drag line passed to the railway company and the *Hunter Ma-*

*chinery Company* was discharged. This contention is based upon the well established rule that where a shipper tenders to a carrier goods for transportation which are insufficiently crated, boxed, packed, or loaded, and such insufficiency is discoverable by the carrier upon ordinary observation and inspection, it is the duty of the carrier to refuse to receive the goods, and that if the carrier does accept the goods it may not thereafter allege that any injury which they sustained in the course of transportation was due to such insufficient crating, boxing, packing, or loading. The rule is otherwise where the insufficiency is not disclosed by ordinary observation and inspection. It is established in this case that the drag line was not properly loaded in that the corners of the superstructure were not stayed either by rods or wires so as to prevent it from swinging upon the base; and that the damage sustained by its collision with a passenger train of the defendant railway company was due to the fact that by reason of such lack of stays the superstructure swung over so as to come in contact with a moving train on another track. It further appears without dispute that the car was removed from the yards without inspection by the defendant's employees. This was due to an error on the part of those charged with the movement of the car. While the defendant *Hunter Machinery Company* was in form the consignor, there can be no dispute, and there is none, that it acted in that regard for the seller, John F. Connell Company. It is not denied that it was the duty of the *Hunter Machinery Company* under its contract to load the drag line so that it might be safely carried under ordinary conditions of transportation from Milwaukee to Omaha. It is found that it failed to perform its contract in that regard. The plaintiff begins this action as assignee of the John F. Connell Company and sues as such assignee for a breach of the contract entered into by the defendant *Hunter Machinery Company* to properly load the drag line. The argument

made here on behalf of the *Hunter Machinery Company* ignores the fact that its liability to the plaintiff as assignee of the John F. Connell Company is contractual in its nature, and that it is in no way discharged from its contractual duty because the railway company failed to perform the duty of properly inspecting the car in question before it was put in the course of transportation. The *Hunter Machinery Company* did not undertake to load the car so that it would be accepted by the railway company, but to load it properly. Whether or not the Connell Company as shipper would have had a cause of action against the defendant because of damages sustained to the goods in transit, and that in such an action the railway company would be estopped to set up the fact that the drag line was insecurely and improperly loaded, it appearing that such improper and insecure loading was apparent upon ordinary observation and inspection of the car, is beside the mark. Certainly the *Hunter Machinery Company* was not discharged from its contractual duty by the failure of the railway company to perform its duty as a common carrier, or because the railway company, as between it and the Connell Company, might be estopped to allege that the goods were improperly and insecurely loaded. The argument presses the rule of law contended for entirely too far, and we find no cases, and we are cited to none, which hold that a party to a contract is relieved of his contractual duty by such a circumstance. We must hold that upon its main contention the *Hunter Machinery Company* cannot prevail.

Certain other errors are assigned by the *Hunter Machinery Company* which we do not find it necessary to discuss at much length. Among other errors assigned is that the *Hunter Machinery Company* was not upon the trial permitted to show that the defendant railway company was in the habit of making flying switches, which subject cars and the goods with which they are loaded to unusual and unreasonable stress and strain. Without holding or in any way

intimating that such evidence is competent in a case like this, it appears without dispute that movements of the car upon which the drag line was loaded were shown in detail from the time it left the yards to the time it reached the place where the damage occurred, and that at no time was such car a part of a flying-switch movement, so that any mere inference that might be drawn from the habitual conduct of the railway company was wholly and conclusively rebutted.

It is further urged that the verdict is excessive because the drag line in question was sold f. o. b. Milwaukee for $5,000 by the *Hunter Machinery Company* to the John F. Connell Company. There was evidence received as to the reasonable value of the property, but the argument made by the *Hunter Machinery Company* is that the contract made by it to the Connell Company is controlling. Just why the price fixed in the contract made by the *Hunter Machinery Company* and John F. Connell Company under date of July 31, 1924, should control rather than the selling price named in the contract between John F. Connell Company and the plaintiff under date of July 29, 1924, we are unable to see. We think all of the evidence as to value was properly admitted and that the question was one for the jury and that there is ample evidence to support its finding.

The contention made that the court improperly received evidence as to the damage done the engine and mail car of the defendant railway company by coming in contact with the superstructure of the drag line is without merit. While it is true as argued that verdicts must rest upon evidence and not upon mere conjecture, the evidence in this case amply supports the verdict.

We have examined other assignments and do not deem it necessary to discuss them.

*By the Court.*—Judgment affirmed.