C. L. Hybart, of Monroeville, for petitioner.

J. D. Ratcliffe, of Monroeville, opposed.

L. M. Abbot, of Washington, D. C., Stokely, Scrivner, Dominick & Smith, of Birmingham, Pettus & Fuller, of Selma, and McKinley & McDaniel, of Linden, for appellant.

(135 So. 187)

SOUTHERN RY. CO. v. FRANK DE LATOUR, Inc.

2 Div. 985.

Supreme Court of Alabama.

May 28, 1931.

Rehearing Denied June 18, 1931.

Weil, Stakely & Cater, of Montgomery, for appellee.

246

## SAYRE, J.

The action is for damages alleged to have been caused by the negligence of defendant (appellant) in loading or transporting a carload of turkeys from Allenville in Marengo county to New Orleans, whereby said turkeys were injured and lost to plaintiff.

We quote from appellee's brief as follows: "The turkeys were killed by over-crowding in the car. The car is what is known as a poultry car and was arranged in decks or shelves. (Record p. 28.) The decks are approximately twelve inches in height, except the top tier next to the roof of the car, which is approximately sixteen to eighteen inches in height. (Record p. 37.) The distance between the decks or tiers for the shipment of turkeys should be about twenty to twenty-four inches. Ordinarily every other shelf should be removed in order to provide a compartment of the proper height for the shipment of live turkeys. The car provided by the defendant for shipment of the turkeys was not adequately arranged for such shipment, for the reason that the alternative tiers or decks had not been removed. (Record pp. 40–41.) As a result of the cramping of the turkeys because such decks or tiers had not been removed, the turkeys died of asphyxiation."

On the bill of lading and the freight bill appeared the notation, "S/L and C." There was no proof of the meaning of this notation, and appellee denies the right of the court to know without further proof that it meant "Shipper's Load and Count." But it is shown very clearly—without contradiction, in fact—that the shipment was an interstate shipment; that the car in which the shipment was made was furnished on appellee's request by the "Live Poultry Transit Company" of Chicago; that it was constructed for the special purpose of transporting fowls, but that when the load consisted of "big toms," or gobblers, alternate shelves were to be removed. It is entirely clear that the shipper in this case undertook to load the car, sending a man from a distance to do the work. This man's business was the "handling of poultry, running of poultry to New York, that is, care taker, in car load lots, of poultry, running to New York." In this case, as we have indicated, the car was sent to New Orleans. The car had a "state room" in which the caretaker traveled with the shipment.

This man, Morse, went to Allenville and undertook to prepare the car and to load or superintend, with his own help, the loading of the car. He took out some of the alternate shelves and the coops resting upon them, thus making room for the "big toms." His testimony was taken by deposition and is to the effect that in the matter of this shipment he loaded or supervised the loading of the turkeys upon the car, "until the agent interfered." He testified: "I proceeded in the usual manner of loading turkeys by taking out such floors or decks as was necessary for the proper loading of turkeys, and at such action on my part the agent objected." Answering a question, he said: "The floors and decks were too close together, and floors should have been properly removed." That: "I removed four of the decks, as best I remember." That: "Just as we had removed the fourth deck the agent came to the car and said: 'You are tearing them out'; I replied, 'Yes.' He said: 'Who is responsible for them?' I said: 'I had not thought anything about that part of it.' ·He replied this, or this in substance: 'He was seeing after the car and he was reporting damages to the car, and that I would responsible.' He also made a remark that what I was doing was against the rules of the railroad company."

Appellant's agent, to whom the witness referred, had died since the time in question; but two witnesses, who had bought and collected the turkeys for appellee, and were present while the shipment was being prepared, testified, in effect, that appellant's agent took no part in the preparation of the car by suggestion or otherwise, and the undisputed fact is that a car, furnished to every intent and purpose by appellee—that is, by the Live Poultry Transit Company on appellee's request—and suited for the shipment of twelve thousand to fourteen thousand pounds of fowls, was loaded by appellee's agent with eighteen thousand pounds, and that as a result a great many of them were asphyxiated when the shipment reached New Orleans.

It is safe to assume that the trial court undertook in its judgment to follow the law as stated in McCarthy v. L. & N., 102 Ala. 193, 14 So. 370, 48 Am. St. Rep. 29, and Atlantic Coast Line R. Co. v. Rice, 169 Ala. 265, 52 So. 918, 921, 29 L. R. A. (N. S.) 1214, Ann. Cas. 1912B, 389. In the last named of these cases it was said that: "The carrier may, in a proper case, refuse a shipment where in unfit condition for transportation. If so, it must be a necessary consequence that, having accepted the shipment, as tendered, its duty is unmodified by the character, sufficiency or insufficiency, open to observation, of the packing of the shipment so received for transportation. * * * There is no such thing as contributory negligence in cases of this character (McCarthy v. L. & N., supra) for the satisfactory reason that if negligent at all in

the loss of or damage to goods committed to a common carrier for its service the carrier is liable, the plea of contributory negligence being one of confession and avoidance." Comparing the law of cases involving the carriage of persons with that of cases involving the carriage of goods, the court said (102 Ala. 193, 14 So. 372, 48 Am. St. Rep. 29): "The unaided, uncontributed to negligence of the plaintiff producing the injury is a defense; but where there is negligence also on the part of the defendant, without which, notwithstanding plaintiff's fault, the injury would not have happened, this fault of the defendant neutralizes and eviscerates the negligence of the plaintiff as a ground of defense. In the one case, plaintiff's contributory negligence destroys the cause of action; in the other, defendant's concurring negligence destroys the defense."

A clearer statement—if we may be permitted so to say—of the principle involved may be found in Northwestern Marble Co. v. Williams, 128 Minn. 514, 151 N. W. 419, 420, L. R. A. 1915D, 1077, where the court said: "It appears to us that the rules of contributory negligence have no application to such a case. Contributory negligence of plaintiff is a defense only in cases where the action is founded on negligence of defendant. Here the action is not founded on negligence of the carrier at all. The carrier's common-law liability is founded, not on negligence, but 'on broad principles of public policy and convenience, and was introduced to prevent the necessity of going into circumstances impossible to be unraveled.'" The court in that case then affirms the rule of McCarthy v. L. & N., and Atlantic Coast Line R. Co. v. Rice, supra, and adds: "It cannot be said, however, that the carrier must, at his peril, know that the goods are not in fact safely packed. The shipper usually knows better than the carrier the manner in which the goods have been packed and the manner in which they should be packed, and even though the carrier may have knowledge of some defect in the packing, still if it is not apparent to the ordinary observation of the carrier or his servants that the goods cannot be safely carried in the condition in which they are presented, the carrier should not be held to take the chances of injury from improper packing," citing Jaggard on Torts, 1064; and McCarthy v. L. & N., supra. This extract from 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077, in our judgment, states the law applicable in this case.

A very similar case, Cohn v. Platt, 48 Misc. Rep. 378, 95 N. Y. S. 535, is headnoted as follows:

"1. The natural and reasonable inference from evidence, in an action for death of fowl in transit, that the shipper put too many in the crates, and that the carrier exercised reasonable and proper care in packing the crates, so that each would receive air, and in handling them, is that the loss occurred from overcrowding, and not from negligence of the carrier.

"2. A carrier is not negligent in receiving for shipment overpacked crates of fowl for shipment; the shippers, but not the carrier's servants, being expected to be expert on the question of how many fowl could be safely packed in a crate."

The court in the last cited case said: (After finding that the loss occurred by reason of overcrowding) "There is nothing in the suggestion that the defendant [the action was against Platt as president of the United States Express Company] should have declined to receive the overpacked crates. How many fowl could safely be packed in a crate of a given size was largely a matter to be determined by experience and expert knowledge. Such experience and knowledge the shippers might be expected to have, but there is no reason why the defendant's servants should be expert upon such a subject." That case is approved in 4 Elliott on Railroads, § 2336.

■■ The court here accepts the version of what occurred given by the two witnesses who testify in effect that there was no interference with Morse in loading the car and that he failed to remove more of the decks on which the coops rested for the reason that he desired to ship eighteen thousand pounds of turkeys in a car designed to carry twelve thousand to fourteen thousand pounds; that he was an expert in that business, sent to superintend the loading of the car for that reason; that his testimony has been colored by his interest as an employee of the shipper; and that the testimony of Bradley Collins and C. W. Davies, witnesses for defendant, who testified that defendant's agent at Allenville had nothing to do with loading the car, should be accepted; that defendant's agent at Allenville was not aware that the car had been overloaded, and cannot on the evidence be fairly charged with notice of that fact, with result, as determined by the reason of the matter and the adjudicated cases to which we have referred, that plaintiff's loss must be charged to the neglect of its agent and cannot be charged to defendant.

Judgment will therefore be rendered for defendant.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.