WILLIAM ROBINSON and Another, Appellants, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Fourth Department, October 9, 1935.

*Morey & Schlenker* [*Arthur C. Minahan* of counsel], for the appellants.

*Rann, Vaughan, Brown & Sturtevant* [*Richard L. Wolf* of counsel], for the respondent.

CROSBY, J. This case comes up on a set of stipulated facts. Plaintiffs were consignees of a carload of oranges shipped from Florida. The defendant was the last connecting carrier of the oranges and delivered them to plaintiffs at Buffalo. The oranges were packed in mesh bags, 3,983 in number, and they were piled twelve layers deep in the car. There is no evidence that the car was roughly handled or involved in any accident, but the oranges were greatly damaged when delivered at Buffalo, the bottom layer entirely ruined, the top three layers in good condition, and the intervening layers damaged from five per cent to eighty per cent, the lower the layer the greater the damage. The inference is irresistible that the weight of the oranges themselves was their own undoing.

The oranges were shipped under a uniform straight bill of lading, which, by stipulation at the argument, was made a part of the evidence, in addition to the stipulated facts. That bill of lading contains the words: " Shipper's Load and Count."

Section 101 of title 49 of the United States Code provides as follows: " The carrier may also by inserting in the bill of lading the words ' Shipper's weight, load, and count,' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading " etc.

No other conclusion can be reached, upon the stipulated facts, than that the oranges were improperly loaded.

Plaintiffs base their right to recover upon stipulated fact No. 6: " That the tariffs of the defendant and its connecting lines permitted the shipment of oranges in mesh bags loaded," as these oranges were loaded. Their argument is that, in their vast experience as carriers, railroads learn, and ought to know, what are safe ways of shipping goods of various kinds, and that, by promulgating a tariff rate for shipping oranges in the manner in which these were shipped, they hold out to shippers an inducement to ship oranges in that manner, and tacitly represent that such is a safe manner for shipping oranges, and thereby impliedly undertake that, as to oranges so shipped, the burden of the common-law liability of carriers will be borne by them.

The cases relied upon by plaintiffs do not bear out their contention. Many of them are cases where less than carload lots

were shipped, and in such cases the carrier takes the responsibility of seeing that the goods are properly loaded. The carrier is not permitted to accept goods improperly crated by the shipper and then escape liability for damage due to such faulty crating. It is the carrier's duty to refuse to carry goods not properly packed. (*Hannibal Railroad* v. *Swift*, 79 U. S. [12 Wall.] 262; *Matter of The David & Coroline*, 5 Blatch. [U. S.] 266.)

But where the shipper undertakes to ship carload lots, and to do his own loading, he — to quote from the opinion of one of the cases cited in appellants' own brief —" usually knows better than the carrier the manner in which the goods have been packed and the manner in which they should be packed " (*Northwestern Marble & Tile Co.* v. *Williams*, 128 Minn. 514; 151 N. W. 419), and he should bear the loss sustained by improper loading.

In another case cited by appellants (*South Carolina Asparagus Growers' Assn.* v. *Southern R. Co.*, 46 F. [2d] 452), it was said: " Mere knowledge on the part of the local agent of the carrier of the negligent manner in which the shipment had been packed could not impose liability for this negligence on the carrier, where the shipper itself had expressly undertaken the packing and the injury sustained was due to negligence in this regard and not to any negligence on the part of the carrier."

Publishing a tariff rate for the kind of shipment employed in the instant case charged defendant with nothing more than knowledge that some shipper might ship goods that way, so it would seem that the reasoning contained in the last quotation was in point.

And why should we say that the carrier should not offer shippers the right to ship oranges in mesh bags if they so desire? It might be a proper way in which to make short haul shipments. A shipper of oranges in carload lots ought to be permitted to use his own judgment, and, having used it, should be responsible for the result. Placing on the bill of lading the words " Shipper's Load and Count " gives the shipper the privilege of loading as he pleases. Requiring the carrier to see that the shipper does his own business prudently, and making it responsible for his failure to do so, would not be just.

The judgment should be affirmed, with costs.

All concur, except THOMPSON, J., who dissents and votes for reversal on the law and judgment for the plaintiffs as demanded in the complaint. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment affirmed, with costs.