Plaintiff, a dealer in used automobiles, doing business in Shreveport, brought suit for damages to a shipment of automobiles from St. Louis to Shreveport, which shipment was handled by the defendant railway.
The facts show that plaintiff purchased twelve (12) used automobiles from the Greater St. Louis Auction Company, which cars were shipped from St. Louis to Shreveport over the line of the St. Louis Southwestern Railway. Four automobiles were loaded in each of three specially equipped automobile freight cars, and upon arrival in Shreveport plaintiff found that of the eight automobiles, comprising two carloads, which arrived on one of defendant's trains, seven had suffered substantial damage en route. The remaining four automobiles arrived on another train some day or so later and were found to be in good condition. Plaintiff claims the sum of $294.37, representing costs of repairs to the seven damaged automobiles; further prayed for the sum of $150 as loss in the sale value of said cars, and, further, the sum of $50 as penalty under the provisions of Act No. 29 of 1908. The judge of the City Court of Shreveport, in which tribunal the suit was brought, gave judgment in favor of plaintiff in the sum of $294.37, rejected the demands for unrealized profits, and sustained a plea of unconstitutionality directed at Act No. 29 of 1908. From this judgment defendant appeals. Inasmuch as plaintiff has not answered the appeal, his claim for unrealized profits and for a penalty under the act referred to are no longer at issue.
There is no question as to the damages to the automobiles as alleged in the petition and evidenced by the itemized statement attached thereto, defendant having admitted the same by a stipulation set forth in the record. Neither is there any doubt as to the fact that the eight automobiles were in good condition when loaded aboard two freight cars of the defendant railway line at St. Louis, and that upon arrival at Shreveport, the point of destination, seven of the automobiles were found to be damaged, the cost of repairing the damage amounting to the sum of $294.37.
The sole remaining issue involved in this case, and the only one before us for adjudication on this appeal is with regard to defendant's contention, which is made the basis for his appeal, that the shipment was made under what is known as "shipper's load and count" bills of lading; that this fact places the burden of proof to show proper loading upon the plaintiff, which burden plaintiff has failed to sustain; that the facts adduced on trial of the case show that the damage to the automobiles resulted from the shipper's improper loading, and, accordingly, the defendant railway line is absolved from any liability under the circumstances.
The Federal Bills of Lading Act, 39 Stat. 541, 49 U.S.C.A. § 101, provides for the issuance of what are known as shipper's load and count bills of lading in these words:
"The carrier may also by inserting in the bill of lading the words 'Shipper's weight, *Page 629 
load, and count,' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading * * *."
Although the words, or words of similar purport, as provided in the quoted portion of the above act, were not actually inserted in the bills of lading involved in the instant case, each of the two bills contains the notation "SLC," which unquestionably indicates "shipper's load and count." The facts show that the shipment was loaded by plaintiff through his agents, and it therefore follows that, if the damage was caused by improper loading, the defense is good.
It is argued on behalf of defendant that in this case the plaintiff bears the burden of establishing not only that the goods consigned were in good condition when loaded and were damaged upon arrival at the point of destination, the establishment of which facts form the requisite basis of every claim for damages by a shipper of goods in interstate commerce, but the additional burden of establishing the fact that the goods were properly loaded, and, as a consequence, that the damage could not have resulted from improper loading on the part of the claimant or his agents.
In view of the finding on the facts as disclosed by the record in this case, there is no necessity for entering into a discussion and analysis of the authorities bearing upon the argument advanced on behalf of the defendant. Inasmuch as the Judge of the trial Court did not assign written reasons for judgment, we do not know the basis for his conclusion, but, in our opinion, the established facts are determinative of the issues involved herein.
Plaintiff has definitely established that the eight automobiles were loaded by his agents in freight cars for handling by the defendant railway line at St. Louis, the point or origin of the shipment, and that seven of the automobiles were damaged upon arrival of the shipment at Shreveport, Louisiana, the point of destination. Defendant has made no effort to controvert plaintiff's showing on either of these points.
We find that plaintiff has satisfactorily established the fact that the automobiles were properly loaded for shipment, and defendant has failed to overcome plaintiff's evidence on this point by any testimony which would establish its defense that the damages to the automobiles resulted from and were caused "by the improper and negligent manner in which said automobiles were loaded by shipper upon the freight cars," as alleged in Article 11 of defendant's answer.
The testimony of Charles E. Ringer, a witness for plaintiff, was introduced by deposition. The testimony of the witness discloses the fact that he is an experienced loader, having been engaged in the business of loading automobiles for shipment over a period of some seven or eight years. Ringer was in charge of the loading of the automobiles involved in this suit, and he describes in detail the method of loading which was used. The three freight cars, in which the twelve automobiles were loaded for shipment, were specially designed for transporting automobiles, and were equipped with a device known as the Evans Loader, the purpose of which is to effect the raising of the two automobiles in opposite ends of the car in such manner as to permit the loading of two automobiles upon the floor of the freight car. This device is provided with a set of toggle chains, each of which is secured at one end to the loader, the other end being fastened, in the process of loading, to the automobile. According to the testimony of the witness, these four chains are fastened, one to each corner of the automobile, usually to the bumpers, or frames, or axles, and drawn snug until secure against any movement. As an additional precaution, heavy quarter-inch steel wire is run from the axle or the bumper, back and front, of each automobile, to the loader and twisted until the wire was drawn as tight as possible. Ringer testified that this was the manner in which the automobiles consigned to plaintiff were loaded, and that they did not shift nor loosen in transit under any ordinary conditions. The automobiles on the floor of the freight car were secured by chains attached to the floor. True, the witness did not describe the exact manner in which each automobile in this particular shipment was secured; that is, he made no effort to state whether the chains and wires were fastened to bumpers or frames or axles, which fact, rather than weakening the witness' testimony tends to strengthen our estimate of its credibility. The witness *Page 630 
did testify positively and without qualification that the automobiles were firmly secured and battened down.
In addition to the convincing testimony of the witness Ringer, we are impressed with the circumstance that the three carloads of automobiles, four to each car, were loaded in exactly the same manner, and that the damaged automobiles were included in the two carloads which arrived at their destination by one train, while the automobiles in the third carload, arriving on a train some day or so later, were undamaged.
To offset the testimony of plaintiff's witness, defendant relied upon the testimony of two employees, Gus G. Lewis and A.L. Heine, Lewis, a car inspector, testified that he inspected the shipment of the two cars of automobiles involved in this suit and found that, while the toggle chains at the end of the cars were fastened properly, the chains next to the center were fastened horizontally rather than diagonally. In the opinion of the witness, the improper fastening of the center toggle chains permitted the automobiles to shift positions, which shifting was the cause of the damage. On cross-examination, the witness admitted his primary purpose in making the inspection was to determine the existence of any mechanical defects in the freight cars, that he found none, and, accordingly, was able to eliminate mechanical defects of the freight cars as a cause of the damage. The witness made a written report of the damage but made no reference therein to the points upon which he based his theory of improper loading, which was later developed in his testimony on trial of the case.
The witness, Heine, under cross-examination, testified that, in his opinion, the damage to the automobiles resulted from an improper method of loading in that the steel wires were attached to the stabilizers instead of the frames of the cars. The witness was obviously at a loss when confronted with the fact that all the cars did not have stabilizers.
Neither of defendant's witnesses was experienced in either the loading or the inspection of loading methods, and both witnesses were frank enough to admit that they were basing their conclusions upon theory and opinions. No effort was made to explain the fact that the third carload of automobiles arrived in good condition and without damage.
Thorough study of the record convinces us that the plaintiff has proved the proper loading of the automobiles through testimony that is positive and convincing, while defendant has failed in his attempt to substantiate the defense of improper loading.
Under the circumstances, therefore, it is immaterial whether the burden was upon plaintiff to prove proper loading and to negative the special defense of improper loading, or upon defendant to establish improper loading as the proximate cause of the damage. Under either theory the facts in this case are with plaintiff.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.
KENNON., J., takes no part.