Van Voorhis, J.
Defendant appeals from a judgment for $59,894.31 entered against it upon the verdict of a jury, by reason of damage alleged to have been caused to plaintiff’s goods in shipment from Memphis, Tennessee, to Brooklyn, New York. Defendant was the delivering carrier. The damaged goods consisted of 100,000 gallons of hydraulic brake fluid contained in gallon cans, which, in turn, were packed in cartons or cases loaded into box cars. On arrival at Brooklyn, many cans in each car were found to have been smashed, causing the contents to leak out and be lost.
The shipper’s contention is that this fluid was properly packed and loaded in these cars when received by the initial carrier at Memphis, and that the damage was caused by negligence in handling while in transit. Defendant, which, if liable at all, is to be held for negligence of the initial carrier or of connecting carriers, defends upon the basis that the cans of brake fluid were damaged, in numerous instances, before being received by the railroad, and that any damage which was caused to them in transit was due to improper packing and loading by plaintiff or its agents.. The bill of lading recited that these goods were received by the railroad, ‘ ‘ in apparent good order * * * (contents and condition of contents * * * unknown) ”. The trial court charged the jury that the burden of proof rested on defendant to establish that these goods were improperly packed or loaded and, likewise, that if part of the damage was caused by improper packing or loading and the rest of the damage was caused by negligence of the carrier, plaintiff was entitled to recover for the full amount unless defendant sustained the burden of segregating the amount of damage due to improper loading or packing. During their deliberations, the jury returned into court and asked for a repetition of the latter instruction, which was given over defendant’s exception. The court refused to charge at defendant’s request that plaintiff had the burden of proof upon these questions. Exception was duly taken. Defendant contends that these instructions to the jury, and the refusals to charge as requested, were erroneous, that there is no evidence that these containers were in proper condition when shipped, or *145 were properly packed or loaded and that, in any event, the verdict should be set aside as contrary to the evidence and a new trial granted.
This case is out of the ordinary in that the shipments under these bills of lading, being surplus war material, were loaded and transported for some distance while the freight cars and locomotives were not in charge of the railroad; but were operated at the United States Army depot by German prisoners of war. These men were plaintiff’s agents for this purpose. These cans were thus inspected, packed, loaded and the box cars sealed by plaintiff’s representatives, who likewise formed the cars into trains and hauled them away from the Army depot before they came into possession of the initial carrier or entered into transit.
Under such circumstances, we think the rule does not apply that where the bill of lading is in this form, the carrier has the burden of proving that loss or damage was due to fault of the shipper. “ Where the shipper loads the goods and the common carrier merely issues the uniform bill of lading, without making any special examination, the mere formal declaration of the bill of lading that the goods were received in apparent good order does not call upon the defendant to establish the contrary, nor to assume the burden of showing its freedom from negligence. The evidence of the actual condition of the goods was presumptively known to the shipper, and it must have been available to the plaintiff, and, before he can call upon the defendant to show freedom from negligence, he must show that the conditions existed which fairly gave rise to an inference of such neglect.” (Orunsten v. New York Central R. R. Co., 179 App. Div. 465, 467.)
While under certain circumstances a recital of this kind in a bill of lading may constitute prima facie evidence that a shipment was in good order when received by the carrier, such a presumption is rebuttable, and yields to the actual facts when they appear. ‘ ‘ Under the facts it was error for the trial court to accept the bill of lading as prima facie evidence that the lumber was in good order when shipped. (U. S. Code, tit. 49, § 101; Orunsten v. N. Y. Central Railroad Co., 179 App. Div. 465 [3d Dept.] ; Smith v. New York Central R.R. Co., 43 Barb. 225; Chicago & N.W.R. Co. v. Stephens Nat. Bank of Fremont, 75 F. [2d] 398; 13 C.J.S. Carriers, § 254, p. 539.) ” (Humboldt Lbr. Co. v. Louisville & Nashville R. R. Co., 258 App. Div. 797.)
*146 In the Humboldt case (supra) the record shows that the shipper, as here, transported the loaded car by its own locomotives before delivering it to the railroad, thus showing, notwithstanding the recital in the bill of lading, that the carrier did not inspect the goods when it received them, and that there was an interval during which damage could have occurred through the handling of the freight cars by plaintiff’s representatives. There is nothing here to show what happened to these cars while they were being moved by the Army locomotives.
In Lewis v. New York, O. & W. Ry. Co. (210 N. Y. 429, 432-433) the court said: “ To hold that a carrier impliedly undertakes to inspect for the consignee’s protection all cars that come into its custody, no matter where loaded or by whom, would be to impose an unjust burden.”
In Robinson v. New York Central R. R. Co. (245 App. Div. 378, 380, affd. 270 N. Y. 659) the Appellate Division said: “ But where the shipper undertakes to ship carload lots, and to do his own loading, he — to quote from the opinion of one of the cases cited in appellants’ own brief — ‘ usually knows better than the carrier the manner in which the goods have been packed and the manner in which they should be packed ’ (Northwestern Marble & Tile Co. v. Williams, 128 Minn. 514; 151 N. W. 419), and he should bear the loss sustained by improper loading. * * * A shipper of * * * carload lots ought to be permitted to use his own judgment, and, having used it, should be responsible for the result. * * * Requiring the carrier to see that the shipper does his own business prudently, and making it responsible for his failure to do so, would not be just. ”
The instructions to the jury upon these points constituted reversible error.
The testimony of the witness Podesta concerning how these cars were loaded is indefinite, and that of the witness Wake-field, a former Army captain in charge of that section of the depot, called for defendant, casts additional doubt upon plaintiff’s claim. He testified that when the boxes and cartons containing these cans of fluid were received at the depot about a year previously, they were not in the best of condition, but looked shopworn, were bruised and showed evidence of having been leaky. Several times while in storage, stacks had fallen down which had to be restacked due, to crushing of containers and cartons coming apart. Wakefield found damaged con- *147 tamers all through the stacks. Concerning the loading of these packages into the cars, this witness testified: “ We didn’t put in any we knew were absolutely bad; no, sir. Q. You mean you tried to put in good ones? A. We put them all in unless we saw some actually leaking or busted open, but all of them had signs of leaking one time or another.” Wakefield testified that these packages were not good enough either for overseas or domestic shipment, and that he had so reported to his superior officer.
These cartons or cases of cans were loaded into twenty box cars. They left the Army depot in three or four different trains, which were separated at various junction points, until these cars were proceeding to their destination, as pointed out by the trial court, in as many as fourteen different trains, traveling on different days. Nevertheless, the damage to the cans and cartons in each car was found upon arrival to be substantially the same as in the other cars. Concerning this, the trial court pertinently remarked in his opinion on the motion to set aside the verdict: ‘1 The significance of these facts, plus the fact that the consequence in each of the cars was virtually the same, is quite serious. It would seem improbable that each train would be mishandled to the extent necessary to effect the damage done. It is argued that it is more probable that the damage resulted from a condition that was common to all cars, that is, from the way they were loaded.” (195 Misc. 355, 357.) The Trial Justice indicated his view that the verdict should have been for defendant, but declined to set it aside. In our view, the verdict was contrary to the overwhelming weight of the evidence.
• The judgment appealed from should be reversed on the facts and the law, and a new trial granted, with costs to appellant to abide the event.
Peck, P. J., Dore, Callahan and Shientag, JJ., concur.
Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event. [See post, p. 974.]