**MODERN TOOL CORP. v. PENNSYL-
VANIA R. CO.**

Civ. A. 138–49.

United States District Court
D. New Jersey.

Sept. 25, 1951.

Ervin S. Fulop, Union, N. J., for plaintiff.

Lum, Fairlie & Foster, Newark, N. J., by William F. Tompkins, Newark, N. J., for defendant.

MODARELLI, District Judge.

This is an action to recover for damages to two (2) used Landis Grinders damaged in transit from Buffalo, New York, to Harrison, New Jersey.

On March 29, 1948, the War Assets Administration, through the Frontier Contracting Co., Inc., consigned to Modern Tool Corporation two (2) Landis Grinders together with one (1) Cincinnati Milling Machine, comprising a carload shipment. The freight car containing these machines was loaded by the shipper on the shipper's private siding. The car was sealed and the Delaware, Lackawanna and Western Railroad delivered it to the defendant, Pennsylvania Railroad, who carried it to the plaintiff. Upon arrival at Harrison, it was discovered that the Landis Grinder at the brake or "B" end of the car had toppled over onto the grinder next to it located toward the center of the car. The two (2) grinders were sold as "junk" for Ninety-Eight Dollars ($98).

The plaintiff contends that, as a matter of law, it is immaterial whether or not the machines were properly loaded by the shipper. He contends that by accepting the shipment, the railroad accepted the responsibility for carrying the machines safely, regardless of the question of shipper's negligence. Plaintiff cites Commodity Credit Corp. v. Norton, 3 Cir., 1948, 167 F.2d 161, which holds that the carrier is responsible "without regard for the exercise of due care, unless, of course, the damage or loss flows from an excepted cause. * * *" 167 F.2d at page 164. However, as that case clearly indicates, the carrier is not an insurer. At common law, the carrier had a duty to transport and deliver safely against all contingencies *except* an Act of God, the public enemy, or the act or default of the shipper. Austin v. Seaboard Airline R. Co., 5 Cir., 1951, 188 F.2d 239; Farris Bros. & Co. v. Pennsylvania R. R. Co., 1930, 98 Pa.Super. 123, 126; St. Louis-S. F. Ry. Co. v. Glow Electric Co., 1929, 35 Ohio App. 291, 172 N.E. 425; Ross v. Troy & Boston Ry. Co., 1887, 49 Vt. 364, 24 Am.Rep. 144; Kassel Poultry Co. v. Pennsylvania R. R. Co., N.J.Sup.1929, 145 A. 316, 7 N.J.Misc. 301. It should be noted that the very bill of lading for the shipment here in question contained in Section 1(b) of its contract terms and conditions the exceptions noted above.

The defendant contends that the machines were improperly loaded by the shipper, and that the damage was occasioned solely by this default. The carrier bears the burden of proving this contention. Atlantic Refining Co. v. Pennsylvania R. R. Co., 1921, 270 Pa. 415, 113 A. 570; Crump v. Thompson, 8 Cir., 1948, 171 F.2d 442.

Section 101 of Title 49 U.S.C.A. states: "The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport, indicate that the goods were loaded by the shipper * * * and if such statement be true, the carrier shall not be liable for damages caused by the improper loading * * *."

Where "shipper's load and count" appears on the bill of lading, and, in fact, the goods were improperly loaded, the shipper is liable for the loss. Robinson v. N. Y. Central R. Co., 245 App.Div. 378, 282 N.Y.S. 877, affirmed 1936, 270 N.Y. 659, 1 N.E.2d 985.

The bill of lading here contained no such notation. There is nothing in the statute to indicate that the mere omission of the words "Shipper's weight, load, and count" in and of itself makes the carrier liable for damage to goods improperly loaded. The omission of the statutory words merely serves to shift upon the

carrier the burden of proving that the goods were improperly loaded by the shipper, and that the damage ensued from that cause. "[The shipper's load and count notation] * * * has the effect of placing the burden upon the shipper who loads on his private side track to prove that the amount specified was loaded and that a less amount was taken out of the car by the consignee; whereas in the case of a receipt not so qualified the burden is upon the carrier to prove that the amount specified in the bill of lading was either not in fact loaded, or was delivered, or otherwise to settle for the full value thereof." Dwinell v. Duluth S. S. & A. Ry. Co., 1928, 242 Mich. 357, 218 N.W. 649, citing with approval La. State Rice Milling Co. v. Morgan's La. & Texas Ry. & S. S. Co., 34 I.C.C.Rep. 511. See also 10 Corpus Juris, 121 Sec. 147. Robert's Federal Liability of Carriers, Second Edition, Volume I, Pages 714, 715. See also Adams Express Co. v. Croninger, 1913, 226 U.S. 491, 506, 33 S.Ct. 148, 57 L.Ed. 314; St. Louis-S. F. Ry. Co. v. Glow Electric Co., supra, 172 N.E. at page 428.

■ The fact that the carrier accepted the goods does not preclude him from a defense of improper loading. St. Louis-S. F. Ry. Co. v. Glow Electric Co., supra.

The car was inspected at the Harrison freight station by the operating clerk and car sealer-checker of the defendant-railroad. From the testimony of these men, of the rigger who unloaded the car, and from the photographs taken of the interior of the car before the machines were unloaded, it was clearly established how the machines were secured. All three (3) machines were placed upon skids which were bolted to the car floor. The Landis Grinder in the middle of the car was secured to the skids by means of tierods. The machine which toppled was not so secured. All three (3) machines were braced against the sides and car floor by 6 by 6's all around. It is significant that the grinder which was properly loaded with tierods did not topple over despite the fact that the grinder which was improperly loaded toppled against it.

■ The defendant introduced as evidence of the proper method of loading Pamphlet No. 21 of the Association of American Railroads which deals with that subject and Consolidated Freight Classification No. 17, Official Classification No. 61, filed with the Interstate Commerce Commission in effect on the date in question. Both are admissible as evidence of proper loading procedure. Lever Bros. Co. v. Baltimore & Ohio R. Co., 4 Cir., 1947, 164 F.2d 738; Farris Bros. & Co. v. Pennsylvania R. R. Co., supra; Blytheville Cotton Oil Co. v. Kurn, 6 Cir., 1946, 155 F.2d 467; Proctor v. Henwood, La.App.1945, 23 So.2d 628. Rule 27 of Official Classification No. 61 states: "Section 3. Shippers must observe carriers' rules regulating safe loading of freight and protection of equipment * * *." Pamphlet No. 21 of the Association of American Railroads clearly states at page 9: "Note: In no case should the skids supporting machinery be fastened to the car floor." and at pages 6 and 7, four methods of securing the machines to the skid unit are suggested. It is recommended that tierods are effective for certain types of heavy machines. At pages 14 to 16 illustrations clearly denote these methods, none of which were employed to secure the Landis Grinders.

■ The defendant thus established that the machines were improperly loaded in that all skids were fastened to the car floor, and the machine which toppled was not secured to its skid. The contention that the damage was caused by rough handling was refuted by introduction of evidence that during the course of the shipment nothing occurred which would likely cause damage. Snowden v. Tremont & G. Ry. Co., La.App., 140 So. 122; Lever Bros. Co. v. Baltimore & Ohio R. Co., supra. The carrier cannot be held liable here for the act of the shipper in loading the car improperly. Lever Bros. case, supra. See also Alabama & V. Ry. Co. v. American Cotton Oil Co., 5 Cir., 1918, 249 F. 308; Austin v. Seaboard Airline R. Co., supra; Shapiro v. Pennsylvania R. R. Co., 1936, 65 App.D.C. 324, 83 F.2d 581; Blytheville Cotton Oil Co. v. Kurn, supra.

■ The contention was also made that the carrier is liable even if the goods were improperly loaded by the shipper for

598

the carrier has a duty to inspect the car for proper loading, and failing this the carrier is liable. Although there is a school of thought which absolves the carrier from liability even if it is aware of the defect of loading upon accepting the goods, Ross v. Troy & Boston R. Co., supra, the majority and better view holds the carrier liable if the defect is patent. Lewis Mach. Co. v. Aztec Lines, Inc., 7 Cir., 1949, 172 F. 2d 746; Perkel v. P. R. R. Co., 1933, 148 Misc. 284, 265 N.Y.S. 597. As to defects not perfectly apparent, the test is one of "ordinary observation." Thompson v. Chicago, M. & St. P. Ry. Co., 1928, 195 Wis. 78, 217 N.W. 927, 929; 13 C.J.S., Carriers, § 67 p. 124; 9 Am.Juris 866, 867. "In so far as its condition could be ascertained by mere inspection". Beresin v. P. R. R. Co., 1935, 116 Pa.Sup. 291, 176 A. 774, 775. Alabama & V. Ry. Co. v. American Cotton Oil Co., supra; Blytheville Cotton Oil Co. v. Kurn, supra. "The shipper usually knows better than the carrier the manner in which the goods have been packed * * and even though the carrier may have knowledge of some defect in the packing, still if it is not apparent to the ordinary observation of the carrier * * * that the goods cannot be safely carried in the condition in which they are presented, the carrier should not be held to take the chances of injury from improper packing." 13 C. J.S., Carriers, § 78, pp. 150, 151. See also Southern Ry. Co. v. Frank De Latour, Inc., 223 Ala. 245, 135 So. 187.

■ The car in the instant case was sealed. There was some evidence to indicate that the seal was placed on the car by the shipper. It was not established that a railroad inspector had viewed the interior of the car before the seal was placed on the car; the railroad produced two (2) witnesses who testified that no inspection was made. It was established that if there was an inspection, a record would have been made of that fact. No such record was produced.

It develops then that the defect was not apparent to the railroad. As was stated in Alabama & V. Ry. Co. v. American Cotton Oil Co., supra, " * * * it can scarcely consist with public policy to en-

courage the furnishing by shippers of * * defective loading, by excusing them from the results of their negligence." 249 F. at page 311.

Judgment for defendant.

The foregoing shall be taken as the Findings of Fact and Conclusions of Law.

An order may be submitted in conformity with the findings and conclusions herein expressed.