KASSEL POULTRY COMPANY, INCORPORATED, A CORPORATION, PLAINTIFF-APPELLANT, v. PENNSYLVANIA RAILROAD COMPANY, A CORPORATION, DEFENDANT-APPELLEE.

Argued October 3, 1928—Decided March 20, 1929.

Before Justices Trenchard and Lloyd.

For the appellant, *Lichtenstein, Schwartz & Friedenberg* (*John H. Kelley* and *William Boorstein,* of counsel).

For the appellee, *Wall, Haight, Carey & Hartpence* (*William H. Shaw,* of counsel).

Per Curiam.

The trial judge, who heard the case without a jury, settled the state of the case as follows:

"The plaintiff shipped from North Carolina two cars of live poultry, consigned to itself at Jersey City. The bill of lading was offered in evidence and marked *Exhibit P*-1. The cars were loaded at various points in North Carolina, the last stop at which poultry was placed in the cars being Salisbury, North Carolina. The shipment was in charge of one Elmer E. Hiatt, an employe of the plaintiff, who accompanied the cars, and slept in the one of them which contained the turkeys, and fed, and watered and took care of the poultry. He alone had access to the cars, having put his own Yale padlocks upon the doors, and himself retaining the keys. When the cars left Salisbury, over the Southern railway, the car from which it was alleged turkeys were subsequently stolen, contained about six thousand five hundred pounds of live turkeys. At the Potomac yards in Virginia, the cars were transferred to the defendant carrier, by which they were transported to the Jersey City railroad yard at the foot of Henderson street and placed in a portion of the yard known as the Ball Grounds. The cars reached the ball ground and were placed late in the night of November 21st, or in the early morning of November 22d, 1926. The tracks in the ball ground upon which the two cars were placed contained in all about twenty poultry cars on two tracks. The defendant had four railway police officers who spent the entire night from eleven P. M. of November 21st, to seven A. M. of November 22d, in and about the twenty cars, watching these cars alone. They were known as the poultry detail. The portion of the yard used for the poultry cars were sufficiently lighted during the night so that the checkers could read delivery bills and the marks on crates. Hiatt testified that in the early morning of November 22d, he left the car in which he had been bunking, containing the live turkeys, with other poultry, locked the car after him, and went into the adjoining car where he also had poultry, to feed and care for the birds and prepare them for the market. Between five and six o'clock in the morning, on coming out of the car where he had been working, Hiatt said that he found the other car containing the live turkeys open, and two or three men coming out of the car with birds in bags on their backs. He stated that he hollered to the watchmen, but was

told by the men who had come out of the car to shut up, or he would have his head knocked off. On examining the car from which the men had come, he found that sixty-five or seventy turkeys, weighing one thousand pounds, had been taken. He had heard no noise of the men, nor any commotion from the poultry while he was in that car, the door of which had been closed while he was caring for the poultry. The men on leaving the car containing the turkeys had left the door half open, on the side opposite from certain flat cars which had been placed upon an adjoining track, and which were used as an unloading platform. Each man was said to have a bag of turkeys which had been taken from those near the door, and right at the side where they could be reached handily. The lock had not been broken, but had been opened. The witness stated he still had the lock, but it did not work as well now as it did before. He stated that he reported the robbery about eight o'clock when some of the railroad police came near the car. He claimed that he had seen no one to report to before, and feared to leave the cars lest they might again be robbed. Herman Kaufman, a salesman and weighmaster for the plaintiff, who unloaded and weighed out this car, stated that the turkeys taken from the car weighed about five thousand two hundred and thirty-one pounds, so that the shortage was over twelve hundred pounds, and that the prevailing market price that day for turkeys was forty-five cents per pound. On behalf of the defendant, one Andrew Perkins, sergeant of the railroad police, stated that he had talked with Hiatt at ten A. M. on November 22d, while he was unloading the car. Hiatt, he said, had called him over and stated that the car had been robbed, and that the lock was broken. The witness examined the lock and found it was not broken, and then Hiatt stated that someone had opened it with a key. On being asked by the witness why he had not reported the robbery which had taken place about five A. M., he said that he was too busy. The lock was in working order. Hiatt showed the witness the keys. The delivery receipt signed on the part of the plaintiff and delivered to the defendant was offered in evidence and marked *Exhibit D-1*. The witness William F. Dienst, the railroad police officer who was in charge of the four officers guarding

the poultry, testified that he had heard no unusual noise or disturbance, nor did he see men running away with bags of live turkeys. The only men who were about, he testified, were the men accompanying the cars, and who were working in them. The plaintiff's attorneys asked judgment against the defendant on the ground that it was liable as an insurer, regardless of the fact that the plaintiff's employe placed his own locks upon the car doors and retained the keys in his own possession, and that the entering of the car, as testified by Hiatt, was not forcible, but through the use of a key, and that the defendant was liable for this loss, as it was not occasioned by act of God or the public enemy, or expressly excepted in the bill of lading. The court found from the evidence adduced, that the defendant had used a high degree of care in safeguarding the cars containing the poultry, and that because of the continued presence of the plaintiff's employe Hiatt in and about the car, his placing of his own locks on the doors of the cars and retaining the keys in his own possession, the liability of the carrier was not that of an insurer, but must be predicated upon the absence of such proper precautions to safeguard the shipment as the conditions called for on the part of a common carrier. As no negligence had been shown, judgment was rendered in favor of the defendant, to which ruling the plaintiff prayed and was granted an exception."

We are unable to agree with the conclusions of the learned trial judge.

The bill of lading provided that "no carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof * * * caused by the act or default of the shipper or owner."

In the absence (as here) of special contract to the contrary, a common carrier is liable for all losses of goods received for carriage, not caused by an act of God, or by public enemies, or by the act or default of the shipper, and the carrier cannot be exonerated from loss by showing that there was no negligence. *Mershon* v. *Hobensack,* 22 *N. J. L.* 372; *affirmed,* 23 *Id.* 580; 10 *C. J.* 107, 114.

The trial judge, as we have seen, gave judgment for the defendant because he found that "it had used a high degree of care," and that "no negligence had been shown."

But as we have pointed out, the fact that the defendant was not negligent was insufficient to relieve it from liability. The defendant was liable unless the loss was caused by the act of God, or by public enemies, or by the act or default of the shipper. There is, of course, no suggestion that the loss was caused by the act of God or by public enemies, and so, of course, as to that the judge made no finding, and neither did he make any finding with respect to whether or not the loss was caused by the act or default of the shipper. We therefore think that the judgment is without support. Upon the question whether or not the same or substantially similar testimony would support a finding that the loss was caused by the act or default of the shipper or his agent, we express no opinion.

Since the finding of facts made by the trial judge does not support the judgment rendered, the judgment will be reversed, but without costs, and the record remitted for a new trial.