23 N.J. Super. 289 (1952)
92 A.2d 815
JOSEPH TOKER COMPANY, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LEHIGH VALLEY RAILROAD COMPANY, A CORPORATION OF PENNSYLVANIA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1952.
Decided December 2, 1952.
*290 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Jules E. Tepper argued the cause for plaintiff-appellant (Messrs. Tepper, Tepper & Verney, attorneys; Mr. Bernard Verney and Mr. Ira D. Dorian on the brief).
Mr. Arthur J. Blake argued the cause for defendant-respondent (Messrs. Emory, Langan & Lamb, attorneys).
The opinion of the court was delivered by SMALLEY, J.S.C.
This appeal is taken from a judgment entered in favor of the defendant by the Hudson County District Court sitting without a jury.
Plaintiff is a retail coal dealer in the City of Elizabeth. It is an established practice of retail coal dealers to purchase coal from producers in Pennsylvania, which coal is transported to the yards of the dealers by railroads. The usual manner in which the transaction takes place is as follows. The railroad company receives the coal which has been purchased by the retail dealer at the point of origin. The coal is loaded into open cars and weighed by the railroad at said point. The cars are weighed while empty and again when filled, the difference being the net weight of the contents. At this point a waybill (similar to a bill of lading) is issued to the purchaser which specifies the net weight of the contents of the car. The purchaser (retail dealer) pays the shipper for the coal and the carrier his freight charges based on the weight of the coal as specified in the waybill.
The plaintiff commenced this action on August 10, 1950, claiming damages in the amount of $540.86 for actual loss of *291 coal occurring during certain shipments. The complaint alleged that 94 carloads of coal which were delivered by the defendant railroad under dates in 1949 and 1950 contained less coal when reweighed by defendant at plaintiff's request at point of destination, than when weighed at point of origin. There is attached to the complaint a schedule prepared by the plaintiff which sets forth, among other things, the number of each of the 94 cars, the weight at point of origin, the weight at destination, the net loss in weight, the cash amount due as a result of such alleged loss of coal, and the date the claim for such shortage was rejected by the defendant railroad.
At the pretrial, it was admitted by both litigants that the alleged loss of coal in each case amounted to less than 1 1/2% of the total net weight of the contents of each car. The defendant admitted the accuracy of the schedule but denied that the difference in weight indicated on the schedule is an actual loss of coal, but contended rather that the difference was due to other factors. Defendant further contended that a tariff tolerance allowance of 1 1/2% contained in a schedule filed with the Interstate Commerce Commission applied to damage claims for actual loss of coal and constitutes a bar to liability and recovery for any weight disparity which is less than 1 1/2% of the weight at origin.
At the trial Harry A. Toker, president of the plaintiff company, testified as to the facts contained within the schedule annexed to the complaint. He also explained that whenever a shipment was found to weigh less at point of destination than at point of origin a claim for actual loss was made to the defendant railroad. There was admitted into evidence a letter sent by the railroad rejecting certain of these claims wherein the difference in weight was less than 1 1/2% of the weight of the coal. The letter states that "* * * the loss in each instance is under the tolerance. Therefore, in view of our clear record of handling these cars, we are obliged to disallow these claims." It was admitted, however, that whenever the difference in weight exceeded 1 1/2% *292 the defendant paid for the full amount of difference in weight as an actual loss.
Defendant produced an expert witness who testified that the weight differential between weighings at point of origin and point of destination which do not exceed 1 1/2% of the total net weight of the contents of the open car are deemed to be due to numerous factors, such as variations in scales due to mechanical deficiencies, weather conditions, differences in the manner of weighing and differences in the persons who do the weighing, rather than to any actual loss of material.
In rebuttal, plaintiff introduced an expert in the field of interstate commerce practice who testified that the tariff tolerance relates solely to freight rates and in no way relates to loss of coal in shipment. He further testified that the I.C.C. has held that it has no jurisdiction on losses for claims for damages, and that there are no cases holding that tolerances do not apply to actual loss because the I.C.C. would not even entertain such a complaint.
The lower court, after consideration of the testimony and arguments, found that the plaintiff had failed to sustain the burden of proving an actual loss of coal by merely showing that there was a difference of less than 1 1/2% between the weight at origin as shown by the waybill and the weight at destination as shown on reweighing, and entered judgment for the defendant.
This conclusion was based on a finding that the tariff schedule filed by the defendant with the Interstate Commerce Commission contained a 1 1/2% tolerance for a difference in weights which applied here to absolve the defendant for any claim for loss where the weight difference is within such tolerance.
The questions presented by this appeal are first, whether an actual loss of material has been established by the plaintiff, and secondly, whether the tolerance allowance of 1 1/2% of the tariff schedule filed by the defendant carrier with the Interstate Commerce Commission is applicable to claims for actual loss of coal.
*293 Since an affirmative answer to the second question presented would be dispositive of this entire appeal, it will be feasable to consider that issue first.
Rule 11 of the tariff which defendant filed with the I.C.C. provides as follows:
"* * * when Coal or Coke, Coke Breeze, Coke Dust, Coke Screenings (the direct products of Coal) is loaded in open top cars, the tolerance shall be one and one-half percent (1 1/2%) of the lading with a minimum of five hundred pounds. (see note as to coal)
Note: All provisions for tolerance in this Rule covering coal are separate from the allowances on washed coal published in tariff of originating carrier."
It is defendant's contention that this 1 1/2% tolerance applied to claims for actual loss of coal as well as to freight surcharges. With this contention we cannot agree.
There is nothing in the evidence adduced which can support a finding that the I.C.C. intended the 1 1/2% tolerance approved by it as to freight rates to control also as to claims for actual loss. Further, any attempt by the I.C.C. to make the 1 1/2% tolerance adopted by it a bar to a claim for actual loss in a case in which there is proof of an actual loss in material beyond the showing of a mere difference in weight, would be in violation of the Carmack amendment to the Interstate Commerce Act, 49 U.S.C.A., § 20(11). This amendment (pursuant to which the present action was brought) provides generally that any limitation of liability in any receipt, bill of lading, contract, rule, regulation or tariff is illegal and void and provides, further:
"That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, first, to baggage carried on passenger trains or boats, or trains or boats carrying passengers; second, to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or *294 agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this title; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon; and the commission is empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation."
It is apparent that neither exception could possibly be applicable here.
Plaintiff brings this action under the Carmack amendment to the Interstate Commerce Act, supra. The pertinent section reads as follows:
"Any common carrier * * * receiving property for transportation [in interstate commerce] shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier * * * to which such property may be delivered * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability imposed; and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading * * * for the full actual loss, damage, or injury to such property caused by it or by any such common carrier * * * to which such property may be delivered * * * notwithstanding any limitation of liability * * * in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation * * * is declared to be unlawful and void * * *."
At common law the liability of a common carrier for loss or damage to goods entrusted to it was virtually that of an insurer with certain exceptions. Kassel Poultry Co. v. Pennsylvania R. Co., 7 N.J. Misc. 301 (Sup. Ct. 1929); Commodity Credit Corp. v. Norton, 167 F.2d 161 (C.C.A. & 1948). At common law, the liability of the carrier, except for negligence and misconduct, could be limited by contract, but it must be noted that the Carmack amendment now imposes *295 an absolute prohibition on any such limitations subject to the exceptions stated above which are not applicable here.
Consequently, in order for the plaintiff to recover in this case, it must prove that the amount of coal which was actually delivered to it was less than that which was placed into the cars at point of origin, and for which he paid the purchase price and freight bill.
We think that the plaintiff has not carried its burden of proof sufficiently by a mere showing of a disparity in the respective weights at origin and destination. It has not proved by a preponderance of the evidence that such weight differential represents an actual loss of coal. Rather, we find from the evidence the greater probability to be that the discrepancies in weights in this case were due to the weather conditions, variations in scales due to mechanical deficiencies, the difference in the manner of weighing at point of origin and destination, and the difference in the competency of the persons who weighed at these points.
While it is true that the 1 1/2% tolerance, which the filed tariff permits in connection with freight rates does not apply to bar the plaintiff's claim, the fact that the Interstate Commerce Commission, after hearings, approved tariff schedules containing such tolerance, lends strong support to the evidence in this case that a difference in the weights shown, which is less than 1 1/2%, is more probably accounted for by these extrinsic factors than by any actual loss of coal.
The Commission defined tolerance "as the difference in weights due to variations in scales or weighing which may be permitted without correction of the billed weights." For further explanation it then noted that
"the scales for weighing are usually located in the open. The accuracy of the weighing operation is affected not only by mechanical defects in the weighing apparatus disclosed at the time of the regular tests or inspections, but also by defects in the apparatus and presence of foreign matter therein not readily detectable between the periodic tests and inspections, by weather conditions, including heat, cold, humidity, rain, ice, snow, and wind, by the speed and manner *296 in which shipments are necessarily put over the scale due to the volume of traffic handled, and by the judgment and competency of the weighmaster." Weight Tolerance Rule, 192 I.C.C. 71, 73, 74 (1933).
Finally we conclude that while the tolerance allowance of 1 1/2% cannot be used to defeat plaintiff's claim for damages, we are unable to find that the plaintiff has established by the required proof an actual loss of coal.
Affirmed.